JAMES A. B. STONE v. THE ROSCOMMON LUMBER CO., CHARLES B. FIELD, JOHN MURRAY AND DELOS A. BLODGETT.

*Injunction suit—Test of jurisdiction—Natural and artificial causes—Remedy —Contempt—Charter for a dam—Acquiescence.*

1. Where a bill is filed to enjoin the flooding of complainant's land, exceeding one hundred dollars in value, the chancery court has jurisdiction if it appears that the threatened injury is of a character to render the property comparatively worthless for the purposes to which it is best adapted, and for which it was intended to be used by complainant, regardless of the amount of the immediate damage sustained.

2. The fact that annual freshets on a river slightly impede the growth of hay on complainant's lands will not relieve a defendant from liability for erecting a dam in such a manner as to flood said lands, thereby destroying their value for the purposes to which they are best adapted and for which they were purchased.

3. A person will not be allowed to destroy the property of another by a series of threatened trespasses and then remit him to his remedy at law to recover the damages sustained, but equity will interfere, if appealed to, and enjoin the threatened injury at any period in its perpetration, and thus prevent a multiplicity of suits.

4. The building of a portion of a dam in open defiance of a preliminary injunction restraining its erection should not be allowed with impunity.

5. The action of a board of supervisors authorizing the erection of a dam across a navigable river is no notice to any one of the intention of applicants for such license to avail themselves of it for the purpose of creating a nuisance, to the injury of the property of another.

6. The doctrine of acquiescence cannot apply where a complainant had no notice or knowledge of the creation of the nuisance complained of until it was erected, and never in person or by authorized agent consented to its creation or maintenance, but as soon as he had knowledge of its existence and the effect it would have upon his lands, made preparations to abate it and enjoined the completion of a new dam to take its place.

Appeal from Roscommon. (Fallass, J.) Argued Nov. 4 and 5, 1885. Decided January 13, 1886.

Complainant filed bill to perpetually enjoin the erection and maintenance of a dam upon Muskegon river and a decree was granted as prayed for, from which defendants appeal. The facts are stated in the opinion. Affirmed.

*E. C. Hinsdale* and *C. I. Walker*, for complainant:

In order to justify the application of the principle of acquiescence it must clearly appear that the party against whom it is invoked had full knowledge of his rights, and by his conduct encouraged the other party to alter his condition, who acted upon the faith of such encouragement. There is no acquiescence if the expenditure has been made in ignorance of the consequences on the part of the injured party: Kerr on Injunctions, pp. 202, 203; *Dann v. Spurrier*, 7 Ves. 236. Defendants' claim that no injunction should be granted in this case because the injury to complainant is small, while the interests of the lumber company depending upon the maintenance and use of the dam are very great, is the old argument of monopolists and great corporations against humble individuals, whose rights are to be trampled upon because they are insignificant and the interests of the wrongdoers are great.

Although the complainant has a clear right of action at law for damages incurred from time to time, yet this is a clear case for equitable jurisdiction, on the ground that the remedy at law is inadequate and the injury complained of can only be redressed by a multiplicity of suits: High on Inj., § 485; Kerr on Inj., p. 226; Wood on Nuisances, §§ 119, 120 and 771; *West Point Iron Co. v. Reymert*, 45 N. Y. 703-5; and injunctions in this class of cases are very common: *White v. Forbes*, Walker's Chancery, 112; *Bemis v. Upham*, 13 Pick. 169.

*John E. More* and *Benton Hanchett*, for defendants:

In applying to a court of equity for relief, complainant assumed the burden of making out clearly a strong case. It devolved upon him to show:

1st. That a serious injury had been done or threatened him.

2d. That the injury was in its nature irremediable and one for which he could not be compensated in damages.

3d. That the injury was done or threatened by defendants.

4th. That complainant moved promptly and was guilty of no laches. The counsel for defendants attempt to establish the negative of these propositions by an exhaustive discussion of the testimony in the case, supplemented by authorities as follows: Acquiescence or laches will bar relief in equity: Pomeroy's Eq. Jur., § 965; Gould on Waters, § 530; Wood on Nuisances, § 796, *et seq.*

It was claimed in the court below that acquiescence could not operate as a bar unless it amounted to an equitable estoppel. But that is not true. An estoppel would destroy the right and defeat an action at law or in equity. Acquiescence merely cuts off the right to *equitable* relief, and leaves the party injured to prosecute his remedy at law: Pomeroy's Eq. Jur., § 817.

What will constitute such acquiescence must depend upon the facts of each particular case. If, as in the case at bar, complainant had notice of the intention to build the dam complained of, and sat by and saw large sums of money expended in its construction and in the construction of other works dependent thereon and is chargeable with knowledge of its effect, or if after its construction and its injurious effect had been fully realized, as in this case, he sat by and saw expense incurred in the maintenance of the dam, and improvements made in reliance upon it. the acquiescence is of such a character as to bar him from relief in equity: *Wood v. Sutcliffe*, 2 Sim. (N. S.) 163; *Birmingham Canal Co. v. Lloyd*, 18 Ves. 515; *Slocumb v. C., B. & Q. Ry. Co.*, 57 Ia. 675, 680; *Jacox v. Clark*, Walker Ch. 249; *Cobb v. Smith*, 16 Wis. 692.

If the granting of the injunction would, as in this case, necessarily result in loss to defendants out of all proportion to the injury sustained by complainant, that fact should be considered and have great weight in this case: *Bassett v. Company*, 47 N. H. 426, 438.

SHERWOOD, J. The defendants in this case appeal from a decree of the circuit court for the county of Roscommon, in

chancery, rendered on the seventh day of May, 1885, in favor of the complainant. The bill is filed to perpetually enjoin the erection of a dam upon the Muskegon river, which is the outlet of Houghton lake. In the summer of 1874 the complainant purchased about 680 acres of land, situated upon and near the bank of Houghton lake, and not far from the river. The land was low, and mostly marsh, and was purchased by complainant with the view of making a hay farm of it. He alleges that he built a log house and made other improvements thereon, costing about $1,500. About Houghton lake, and the streams and smaller lakes connected therewith, is a large quantity of pine and other valuable timber, and the most convenient way to get the same to market after being cut is to float the logs, through the lake into the river to its mouth at Lake Michigan. During the lower stages of water in the summer there was not sufficient depth to float the logs. In the latter part of 1874 and first part of 1875 the S. C. Hall Lumber Company erected a dam on the river a short distance below its outlet from the lake, the object of which was to raise the water of the lake above its natural level. In the winter and spring of 1883, after the dam of 1874 had broken away and become worthless, the defendants began the erection of a new dam, to accomplish the same purpose as the old one, and the bill in this case was filed to enjoin the erection of their new dam. The bill was filed on the tenth day of April, 1883, and a preliminary injunction issued, which was served upon all the defendants. In disregard, however, of the order of the court, they went on and completed the dam.

The complainant claims that the dam caused the waters in the lake and river to rise, and overflow his said meadow lands, which he had improved and was improving for raising hay, and which would have been dry, and yielded him good crops but for the overflow complained of; that the injury to his lands was irreparable, and damage great, and that he had no adequate remedy at law.

The defendants filed their joint and several answer to complainant's bill, wherein they admit the lands of com-

plainant are located, with reference to the lake, as stated in the bill, but deny that said lands are suitable for meadow, and aver that they are but a little above the surface of the lake when the waters are at their natural height, and that the lands are too low to ever be worth anything for meadow ; that the hay grown thereon is too coarse, and cannot be cured because of the surface waters, and that it would be impossible to produce good hay from the land without lowering the water in Houghton lake about two feet below the natural level, which would be so expensive as to render the undertaking impracticable.   They further aver that the dam of 1873 has continued across the river until the present time, and that the attempted rebuilding was no more than repairing the dam first constructed, and that such repairing was done before complainant filed his bill in this case, and they deny that the dam raises the water in the lake so as to injure any of complainant's land which would be otherwise suitable for the production of a hay crop.   They also deny that the dam is any injury to plaintiff, or constitutes a nuisance or any irreparable injury.   They admit that the dam was originally built without license or authority from complainant, but are informed it was licensed by the board of supervisors; and they aver that the complainant acquiesced in its continuance, and that complainant is estopped from complaining about the rebuilding or repairing of the dam.   They admit the old dam was open at the time the bill was filed, and unused, and deny that the dam in its present condition will raise the waters in the lake.   They further aver that the lumbering interest has increased to that extent that the dam becomes necessary in low water to float the logs over the bar at the outlet of the Muskegon, and that complainant has acquiesced in the continuance of the dam.

A large amount of testimony was taken upon both sides, and after a hearing upon the pleadings and proofs, the circuit court entered a decree, whereby it found the mischief complained of was established by the proofs, and was irreparable, and made the injunction in the case perpetual.

We have not given a synopsis in full of the pleadings, but so much thereof as we deem necessary to a correct understanding of the case.

The principal questions presented in the record, and argued by the learned counsel upon the hearing, are the following :

(1) What was the character and condition of the land in question in 1874, when the complainant purchased it ?

(2) Was it injured by the erection and maintenance of the first dam ; and if so, the character and extent of that injury ?

(3) Is the present dam such an injury to the complainant as to entitle him to the relief prayed for in his bill ?

(4) Has there been any such acquiescence on the part of complainant as to estop him from claiming any redress, no matter how much he may have been injured, or is likely to be injured, by the dam in existence ?

We shall not, in our discussion of the case, attempt a recapitulation of testimony given upon these various questions, but content ourselves with a statement of the conclusions we have reached, which we regard as supported by a preponderance of the evidence, and of the law which we deem applicable to the case.

The testimony on many of the questions presented in the record, given by the witnesses of the respective parties, differs very greatly, not only as to the facts, but still more widely when opinions are called for. Between fifteen and twenty witnesses were sworn as to the character and condition of the plaintiff's land from the time he made his purchase in 1874 down to the time of filing the bill in this cause—some of the testimony showing its condition as far back as 1862— and from this testimony it appears that, with the exception of about 100 acres, the land of complainant was from a foot to eighteen inches above the natural level of Houghton lake ; that much of it was liable to be overflowed by freshets in the spring and fall, but it was usually dry enough to produce a very fair quality of the coarser kinds of hay, such as blue joint, red top, and marsh hay, in the summer season ; that a large portion of it, with proper cultivation and improvement, could be brought into timothy grass ; that several of these varieties of grass had been gathered for hay, from con-

siderable portions of the land, for a number of years before the complainant made his purchase, and after that complainant improved about 150 acres of the marsh with satisfactory results, before the dam was built; and that all the marsh, except about 100 acres, was susceptible of such improvement. It further appears, we think, from the testimony, that the dam complained of raised the water in the lake and river to such an extent as to render the marsh hay grown upon the land, when it did not kill it out entirely, of such inferior quality as to be worthless, and to completely prevent the improvement of the marsh; that the dam was constructed without the consent of the complainant, and without any proper legal authority so to do; that the property was purchased by complainant for the purpose of making it a hay farm; that with this object in view he had expended thereon, up to the time the dam complained of was built, about $1,500; and that if the dam is to be continued, the injury to the complainant's premises, caused thereby, is irreparable. The facts found by the circuit judge in his decree, in regard to the injury to complainant's land, and the cause thereof, we think fully established by the testimony.

It is unnecessary to consider the extent of complainant's damages, further than to ascertain whether they are sufficient for equitable cognizance, and of this there can be no question so long as it appears the injury is of a character to render the property comparatively worthless for the purposes to which it is best adapted, and for which it was intended to be used by the complainant.

The vast extent of the lumber interest in the region of country in the immediate vicinity of the complainant's lands is not to be forgotten, nor the fact that the use of Houghton lake and the Muskegon river furnish the most feasible route for the owners thereof to secure transportation for their logs and lumber to the best market, nor their right to use these waters for that purpose; but these furnish no authority to them to make such use of these public ways as to subordinate and destroy the rights and interests of individuals, against their consent, without first making full compensation there-

for, as seems to have been done in this case. The statutes of our State have extended every facility possible to aid in the development of these great lumber interests, but at the same time they have not failed to protect the rights of individuals and other interests from impairment and infringement: *Grand Rapids Booming Co. v. Jarvis*, 30 Mich. 308.

The fact that natural causes contribute, with the unlawful acts complained of, in producing the injury, does not relieve from liability to the injured party: *Salisbury v. Herchenroder*, 106 Mass. 458; *Dickinson v. Boyle*, 17 Pick. 78; *Woodward v. Aborn*, 35 Me. 271; *Pittsburgh v. Grier*, 22 Pa. St. 54; *Scott v. Hunter*, 46 Pa. St. 192; *Polack v. Pioche*, 35 Cal. 416. The record in this case shows that the annual freshets occurring upon this stream were not of a character to seriously impede the growth of hay upon this marsh, or to prevent its improvement by complainant previous to the erection of this dam.

Counsel for defendants in this case insist that, before the complainant can have the relief he asks, he must clearly show to the court: *First*, that a serious injury has been done or threatened to his property by the defendants; *second*, that the injury is in its nature irremediable, and one for which he could not be compensated in damages; *third*, that the injury was done or threatened by the defendants; *fourth*, that complainant moved promptly, and was guilty of no laches.

The first requirement, under defendants' view of the case, we have already stated, is satisfactorily shown; also that the second is equally apparent from the evidence. The law does not allow a person, by a series and succession of trespasses, to completely destroy another's property, and then turn the latter over to his action of trespass to recover his damages; but equity, when appealed to, will interfere, and prevent the actual or threatened injury at any period in its perpetration wherever the remedy at law is inadequate. This becomes necessary in order to prevent a multiplicity of suits, and on account of the difficulty of ascertaining the actual damage sustained by the party injured. The case before us shows

abundant reason for this doctrine, and the necessity for its application.

The third requirement, that proof must show the injury done or threatened by the defendants. The erection of the second dam—the one against which the complainant asks relief—is substantially admitted by the defendants, and the record shows that it was not only done by the defendants, but that a portion of it was built in open defiance of the preliminary injunction issued by the circuit court. This should not have been allowed with impunity. It is, however, quite sufficient upon the subject under consideration.

The fourth and last requirement claimed by defendants' counsel to be necessary to entitle complainant to the relief he seeks, is that it must appear he has not acquiesced in the wrongs committed upon his premises, but has moved promptly for the remedy he asks to have applied.

To what extent this doctrine has been held to apply to a case where the complainant was cognizant of the injury threatened or committed from its inception, it is not now necessary to consider. It is enough to say upon this point, in this case, that no such claim can be made or defense interposed to justify the erection of the new dam, as its construction was enjoined before its completion. And so far as regards the erection of the old dam, it clearly appears from the testimony that neither the complainant, nor any person authorized by him, ever consented to its erection or maintenance; neither did he have any notice of its erection until some time after it was built, and then, as soon as he ascertained the effect the same had upon his lands, he commenced preparations to take such action as would prevent its continuance, and abate the nuisance to his property. As soon as the complainant learned that the work of erecting the new dam had commenced, he instituted this suit. The action taken by the board of supervisors was no notice to complainant, or to any one else, of the defendants' intention to avail themselves of it for the purpose of creating a nuisance to the complainant's property.

The statute under which the board are authorized to take

action in the premises expressly provides that it shall not be so construed as to permit the board to authorize any person to flow or otherwise injure the property of another.   How. Stat. § 494.   Neither could the assent of Capt. Stone to, or his acquiescence in, the erection of either of the dams, whether given upon the board or elsewhere, have the effect to destroy or in any manner impair the legal or equitable rights of his father in the premises, so long as he was not properly authorized so to do, or act for him in the premises, and the record shows that he had not such authority.

We have been unable to discover any error in the complainant's proceedings, or in the decree made by Judge Fallass in the case, which must be affirmed with costs.

CAMPBELL, C. J., and MORSE, J., concurred; CHAMPLIN, J., did not sit.