GREAT HIVE OF THE LADIES OF THE MACCABEES FOR MICHIGAN *v.* SUPREME HIVE OF THE LADIES OF THE MACCABEES OF THE WORLD.

1. APPEAL—MOTION TO DISMISS—RES JUDICATA.

Where a motion to dismiss an appeal from an order overruling a demurrer to a bill of complaint, based on the claim that the demurrer was special, and the order therefore not appealable, is denied, the question is *res judicata*, and cannot again be raised on the hearing of the appeal.

2. EQUITY JURISDICTION—BILL OF PEACE—INJUNCTION—BENEFIT SOCIETIES.

Where a bill in equity by a fraternal benefit association against a like association avers its incorporation in Michigan, and the amendment of its articles of association authorizing it to extend its work into other States; asserts its title to a ritualistic book of procedure, its right to use it in such other States, and a mere license to defendant to use it; alleges that defendant is claiming the exclusive right to such ritual in other States, and is threatening, by repeated suits and actions against complainant, and has already by overt acts attempted, to prevent it from using such book in other States; asserts a consequent irreparable injury; and prays that such book be decreed to be its property, and defendant enjoined from interfering with its use thereof,—it amounts to a bill of peace, entitling complainant to injunctive relief.

3. SAME—SUFFICIENCY OF BILL.

Such bill is not objectionable as alleging conclusions of law, instead of facts, in relation to title, right to use, and amendment of articles of association.

4. BENEFIT SOCIETIES—AMENDMENT OF ARTICLES OF ASSOCIATION.

A fraternal beneficiary society organized under 2 Comp. Laws, chap. 212, may amend its articles of association under the general statute relating to corporations (3 Comp. Laws, § 8533), if not authorized so to do by the organic act.

Appeal from Washtenaw; Kinne, J. Submitted November 19, 1901. Decided January 28, 1902.

Bill by the Great Hive of the Ladies of the Maccabees for the State of Michigan against the Supreme Hive of the Ladies of the Maccabees of the World, and others, to establish complainant's title to a certain ritualistic work, and for an injunction. From an order overruling a demurrer to the bill, defendants appeal. Affirmed.

The bill of complaint contains the following allegations: That complainant is a fraternal benefit association, composed exclusively of women, and organized under Act No. 119 of the Public Acts of 1893, as amended, having its principal office at Ann Arbor, and as such is not auxiliary or subordinate to any other organization; that the meeting of complainant association termed "Review of the Great Hive," when convened, has supreme legislative, executive, and administrative authority, and as such is endowed with exclusive power to make all laws, rules, and regulations for its government, and the government of its members, that it may deem expedient; that complainant meets in such review but once in two years, and that its next meeting will be in the month of June, 1902, and in the interim of such meetings its executive committee is vested with full authority and power to execute and perform all its executive and administrative functions not otherwise limited; that said Act No. 119 provides that all associations incorporated thereunder shall be carried on for the sole benefit of its members and their beneficiaries, and not for profit; and, having a lodge system, with a ritualistic form of work, and a representative form of government, may provide for the payment of benefits to its members and their beneficiaries from a fund derived from assessments upon its members. The general objects of the order are to unite fraternally women between the ages of 16 and 70 years, and to provide benefits to those under the age of 50; to give moral and material aid to its members, and those dependent upon them; to establish a fund for the relief of its sick and distressed members; and to care for the living and bury the dead.

That complainant's plan of increasing its membership and extending its beneficent objects is to solicit accessions to membership, and, in connection therewith, to establish in various communities subordinate hives, of which it now has in existence about 800, all located within this State, and having an aggregate membership of 55,000 and upwards; and that at the last review of complainant, held in June, 1900, such action was taken and had that its executive committee was instructed to extend its work to other States, Provinces, Dominions, and Territories, and to solicit accessions to its membership and organize its subordinate hives therein, as in the judgment of such committee was deemed expedient; that complainant had, at the time of filing its said bill of complaint, completed all preparations and arrangements, and was fully prepared to execute such direction and extend the work of the order to other States of the United States and the Dominion of Canada; that at such time there were in existence three other organizations, among others, incorporated under said Act No. 119, Pub. Acts 1893, known as the "Great Camp of the Knights of the Maccabees for the State of Michigan," the "Supreme Tent of the Knights of the Maccabees of the World," and the "Supreme Hive of the Ladies of the Maccabees of the World," all having their principal office at Port Huron; that such great camp had a membership of about 100,000, confined largely to this State; said supreme tent a membership of about 200,000; and said supreme hive a membership of about 80,000,—such last two memberships being mostly outside of this State, and within other of the United States and in the Dominion of Canada.

That the history of these associations establishes that prior to the 29th of June, 1880, there existed in Canada and in New York and Michigan an association known as the "Supreme Tent of the Knights of the Maccabees of the World," such association being incorporated on said last-mentioned day in New York, under an act passed in said State in 1848 entitled "An act to provide for the in-

corporation of benevolent, charitable, scientific, and missionary societies;" that the membership within this State was known as the "Great Camp of the Knights of the Maccabees of the World;" and on the 12th of January, 1881, a joint committee of conference of such supreme tent and great camp met in the city of Port Huron, and the great camp assumed the liabilities of the supreme tent in consideration of the latter joining in a convention for the formation of a new constitution, and shortly thereafter such constitution was agreed upon and formed, and on the 11th day of May, 1881, the legislature of this State passed an act entitled "An act to provide for the incorporation of Subordinate Tents of the Knights of the Maccabees of the World, and the Great Camp thereof for the State of Michigan" (Act No. 143, Pub. Acts 1881), and on the 10th day of June following such great camp met, and thereafter became incorporated under said act, and in the month of September following prepared new laws and a ritualistic form of ceremony, and since that time has continued to be and is the "Great Camp of the Knights of the Maccabees for Michigan;" that said supreme tent became defunct in 1882, and was reorganized in December, 1883, through the action of said great camp.

That in May, 1890, complainant, under authority granted it by said great camp, was organized, and on the 5th of June, 1891, the legislature of this State passed an act entitled "An act to provide for the incorporation of the Great Hive and Subordinate Hives of the Ladies of the Maccabees of the State of Michigan" (Act No. 120, Pub. Acts 1891); that complainant did thereupon adopt laws and originate ritualistic and ceremonial work for its use and government, which laws and work, with certain amendments, have remained in force since such time, and are now governing and used by complainant; that in October, 1892, the supreme hive, defendant herein, was organized by such supreme tent as an auxiliary thereof, and that thereupon complainant, "without giving or intending to give any exclusive right therein, did grant to

such supreme hive permission and leave to use its said ritualistic and ceremonial work, and since such time the said supreme hive has used the same under and by virtue of such permission and leave, with certain changes made therein."

That, in the prosecution of complainant's work of extension, it became necessary for it to apply to the commissioners of insurance, secretaries of state, and other officers having charge of foreign corporations in such States, Provinces, Dominions, and Territories for leave and license to do business therein, and that complainant had amended its articles of incorporation, and made all preparations necessary to apply to such officers for such leave and license; that defendant now makes the sole, unfounded, and unconscionable claim that, as against complainant, the right to use its incorporate name, and the leave heretofore granted to defendant by complainant to use such ritualistic and ceremonial work, is an exclusive right, and precludes complainant from extending its work outside of the State, and from enjoying and using its incorporate name or ritualistic and ceremonial work outside of the State, and that, if complainant is allowed to extend its work, the supreme hive, defendant, will lose some of its membership by reason of the similarity of names and of ritualistic and ceremonial work in the two orders, coupled with the fact that a lower rate of assessment prevails in complainant organization than in such supreme hive, and as a result a pecuniary loss will accrue to the latter.

Complainant denies that the permission and leave granted defendant to use its ritualistic and ceremonial work is an exclusive right that vests in defendant the right to preclude complainant from extending its order or from enjoying and using its incorporate name and its ritualistic and ceremonial work outside of the State, or that any confusion will arise thereby, and avers that, if the claims so made by defendants are well founded, they are unconscionable, for the reason that complainant took, created, and

became entitled to use and enjoy its incorporate name and such ritualistic and ceremonial work, and acquired the right to use and enjoy the same, before the defendant supreme hive was organized or existed, and avers that the only claim of authority or right of defendants to use such ritualistic and ceremonial work is the permission and leave granted by it, and that, should it be true, as claimed by said defendants, that such supreme hive would suffer a lessening of its membership, or its growth be retarded, and a pecuniary loss arise to it by the extension of complainant order, such results are but the natural consequences of the selection of preferable associations by those desiring to become members, and that this furnishes neither legal nor equitable ground upon which defendants can claim the right to exclude complainant from so extending its order, and does not warrant defendants in interfering with complainant in such extension.

That complainant is organized, and its assessments for the payment of death and other benefits and expenses are based, on the minimum rates warranted by the experience of its officers, and, in order to keep such assessments at the present prevailing rate, it is necessary to enlarge its field of operations, and that the lowest rates of assessments are maintained only by the infusion of sufficient new members each year to keep such rates at the minimum cost, and that in this State the expense of securing such members is now out of proportion to the results obtained because of its present large membership therein, and that its sole object and purpose in extending its work outside of the State is that its members may be afforded continued benefits by its present low rate of assessment.

That the officers, representatives, and agents of the defendant supreme hive having charge of its business in this State, and in the several States, Provinces, Dominions, and Territories wherein complainant desires and intends to extend its business, have threatened to bring and maintain actions and suits, both at law and in equity, against complainant and its officers, representatives, and agents in the

courts of each of the several States, Provinces, Dominions, and Territories whenever and wherever application is made by it for leave and license to do business, and that the board of trustees of the. supreme hive have advised complainant and the members of said committee that they will begin, maintain, and prosecute such actions and suits whenever application is made by complainant for such leave and license to do business; that complainant recently applied to the commissioner of insurance of this State for leave and license to file certain amendments to its articles of association, deemed expedient by it, and, at the time such application was heard, defendant supreme hive, acting through its board of trustees and officers, and through counsel selected by them, in pursuance of such plan and design on their part to begin, maintain, and prosecute such actions and suits, appeared before said commissioner, and protested and filed objections on behalf of said supreme hive to the amendments proposed by complainant to such articles of association, and then and there announced and stated that it was the purpose and intention of defendants to begin, maintain, and compel complainant to defend such actions and suits in each of the several States, Provinces, Dominions, and Territories whenever complainant should apply for such leave and license, and thereby interfere with, harass, and prevent complainant from so extending its work, and force complainant to defend such actions and suits in such several States, Provinces, Dominions, and Territories.

That at the hearing before said commissioner of insurance, and on the 27th day of November last (1900), complainant was allowed to amend its articles of incorporation, as asked for; and that such articles were so amended, and that it has taken all steps necessary to apply for leave and . license to the proper officers of the several States, Provinces, Dominions, and Territories to do business therein; and that complainant is desirous of and now fully prepared to extend its business; and that, upon the announcement of the decision of such commissioner of insurance, Bina M. West,

one of the officers of defendant supreme hive, and one of the defendants herein, was interviewed by a representative of a designated newspaper at Port Huron, and that her statement appearing in such paper of November 27, 1900, was the authorized declaration of defendants, their officers, representatives, and agents, of their purpose to oppose complainant in the execution of its work, and to litigate complainant in its said extension, in every possible way; and that protests have already been filed with the commissioners of insurance of the several States against the right of complainant to so extend its work.

It is the purpose and intention of defendants, their officers, representatives, and agents, to begin, maintain, and prosecute such actions and suits against complainant, its said committee, officers, representatives, and agents, both at law and in equity, in the several States, Provinces, Dominions, and Territories, as soon as complainant shall apply for leave and license to do business therein; the result of which would be to impose upon complainant the burden of defending a multiplicity of suits in such several States, Provinces, Dominions, and Territories, and would occasion irreparable injury to it in the prosecution of its work outside of this State, and impose upon it needless, annoying, and harassing litigation, at large expense,—all of which, in the interest of complainant and of said supreme hive, should be avoided.

The bill prays that said ritualistic and ceremonial work may be decreed to be the property of complainant; that complainant may be decreed to be authorized and entitled to use and enjoy the same in any State, etc., which it may enter, freed from any claim of right on the part of the defendants to interfere; that it be decreed the use of its incorporate name as the name of its principal organization, and the use of the name "Subordinate Hive of the Great Hive of the Ladies of the Maccabees for the State of Michigan" for its several subordinate hives, and the exclusive use of such names in any State, etc., that it may be authorized to enter; and that said defendants may be

permanently enjoined from maintaining or prosecuting any suits, either at law or in equity, against complainant in other States, etc.

The demurrer is as follows:

"1. The said bill tenders no issue.

"2. Said bill sets out no rights of complainant that are invaded by defendants.

"3. The said bill is not so framed as to submit any subject-matter to the jurisdiction of the court.

"4. There are no rights averred in the bill which are sought to be protected by the injunction asked.

"5. The allegation in said bill that defendants are using the ritual by leave and license is an allegation of law.

"6. There is no allegation of injury to complainant because of defendants' use of the ritual.

"7. Complainant does not allege in said bill that it has any right to engage in business in other jurisdictions than Michigan.

"8. The bill shows on its face that defendants dispute the legal right of complainant to do business outside of Michigan.

"9. The said bill does not disclose that the disputed matters of law have ever been settled by a court of competent jurisdiction.

"10. A fear of suits and actions is the only injury alleged in said bill, and this is not such an injury as entitles the complainant to an injunction.

"11. The said bill is not a bill of peace.

"12. A suit or action in equity cannot be restrained by injunction.

"13. The laws of different States afford different remedies and rules of right respecting competing corporations and corporations using the same, or nearly the same, name or designating title; and in this respect the laws of other States differ from the laws of the State of Michigan, as do also the rules and regulations of commissioners and secretaries applied to determining the right of a new foreign corporation to do business in said States.

"14. Defendant association has the right to use and have in its assistance in the conduct of its business already established in other States, and in saving itself from improper and injurious competition therein, all the laws, rules, and regulations of each State in that behalf afforded, and its rights and remedies in such other States should not be determined or limited by the laws of Michigan."

From an order overruling the demurrer, defendants have appealed.

*De Vere Hall* (*Benton Hanchett*, of counsel), for complainant.

*Lincoln Avery* and *Russell C. Ostrander*, for defendants.

GRANT, J. (*after stating the facts*). 1. It is urged that the demurrer is special, and that an appeal will not lie from the order overruling it, under the case of *Taylor* v. *Taylor*, 87 Mich. 64 (49 N. W. 519). This question was raised by a motion to dismiss the appeal for that reason, and the motion was denied. It is therefore *res judicata*.

2. If this were purely an injunction bill, there would be much force in the contention of the learned counsel for the defendants. But it is essentially a bill of peace, as defined in 3 Enc. Pl. & Prac. 556, and *Sharon* v. *Tucker*, 144 U. S. 542 (12 Sup. Ct. 720). It alleges certain property rights in the complainant; that the defendants deny these rights, and assert hostile rights in themselves; and that they have no foundation in fact or law for such denial and assertion. If complainant can, by proofs, establish its title to these property rights, it would follow that defendants should be enjoined from interfering with the use of such property rights by complainant. The case presented by the bill is similar to that of threatened and continued trespasses to land. The complainant in such cases must allege and prove his title to the land. Having established his title, the court will then inquire whether the defendant has threatened to commit trespasses thereon, and intends to carry his threats into execution. If the court so finds, an injunction will be granted. So complainant in this case asserts in its bill title to a ritualistic book of procedure, the right to use the same in other States, Territories, and foreign countries, the amendment of its articles of association for that purpose, and a mere license to the defendant association to use it. It avers not only threats made, but

overt acts already taken, by defendants to prevent this use of its property by complainant, and consequent irreparable injury.   It also avers that defendants claim the exclusive right to the ritual.   The demurrer admits these allegations to be true.   The principal reason urged against the bill is that these allegations as to title, right of use, and amendments are conclusions of law, and that the pleader should have stated the facts on which they are based.   The facts are sufficiently averred.   It was not necessary to aver the proofs.   The pleader has asserted in his bill that complainant has duly amended its articles of association.   This is an assertion of a fact of which the amendments and the corporate action to make them will be the evidence.   Even if Act No. 119, Pub. Acts 1893 (chapter 212, 2 Comp. Laws), does not authorize complainant to amend its articles of association, the general statute authorizing such amendment does.   3  Comp. Laws, § 8533; *Detroit Chamber of Commerce* v. *Secretary of State,* 109 Mich. 691 (67 N. W. 897).

The jurisdiction of the court to enjoin defendants from prosecuting suits in other States and countries is not denied by counsel.   Their sole claim is that the bill makes no case for interference.   The principle of the jurisdiction in such cases is stated by Mr. Justice Story in his Equity Jurisprudence (sections 899, 900).   Not only does the bill aver that many suits are threatened, but that defendants have already made preparations to put these threats into execution.   The case thus made is one for the interposition of a court of equity, under the rule established by many cases.   A landowner, whose trees or houses are threatened with destruction by trespasses, is not required to wait till a trespass has been committed and injury done; neither is he required to wait till a stream has been diverted to his injury.   Courts of equity will give him a remedy by injunction.   *Stone* v. *Lumber Co.,* 59 Mich. 24 (26 N. W. 216); *Boston, etc., R. Corp.* v. *Salem, etc., R. Co.,* 2 Gray, 1; 1 High, Inj. § 18; *Smyth* v. *Ames,* 169 U. S. 517 (18 Sup. Ct. 418); *Newaygo Manfg. Co.* v. *Railway Co.,* 64 Mich. 114 (30 N. W. 910).

"The principle of injunctive relief against a tort is that, whenever damage is caused or threatened to property, admitted or legally adjudged to be the plaintiff's, by an act of the defendant, admitted or legally adjudged to be a civil wrong, and such damage is not adequately remediable at law, the inadequacy of the remedy at law is a sufficient equity, and will warrant an injunction against the commission or continuance of the wrong." Adams, Eq. 207.

The same principle controls the present case.  The averments of the bill are sufficient to put the defendants to an answer.

Decree affirmed, with costs, and the case remanded for further proceedings.

HOOKER, C. J., MOORE and MONTGOMERY, JJ., concurred.  LONG, J., took no part in the decision.