HOLCOMB *v.* ALPENA POWER CO.

1. WATERS AND WATERCOURSES—DAMS—FLOODING LANDS—INJUNCTION—DAMAGES—RES ADJUDICATA.

In a suit to restrain defendant from maintaining a dam at its present height, causing plaintiff's land to be overflowed, the former decision of this court (198 Mich. 165) that plaintiff was not entitled to injunctive relief, but was

entitled to damages · for permanent injury to his land, and remanding the case to the court below to determine same, was decisive of the question that the land was damaged, and limited plaintiff to recovery therefor; recovery for damages to crops not being authorized thereby.

2. EVIDENCE—EVIDENCE FROM OBSERVATION—SCIENTIFIC EVIDENCE.
Tests from observation and experience are competent evidence against scientific measurements and theories and often more satisfactory when the two are brought into conflict.

3. WATERS AND WATERCOURSES—FLOODING LAND—DAMAGES—EVIDENCE—SUFFICIENCY.
Testimony by eyewitnesses that plaintiff was unable to raise as good crops since the dam was raised as before, detailing facts and circumstances which they particularly noticed from year to year, sustaining their assertions that plaintiff's land had been seriously damaged thereby; *held*, sufficient to sustain a decree for plaintiff, although said testimony was indirectly controverted by the testimony of engineers, who took levels and made observations, that plaintiff's land was 4 to 5 feet above the water level of the lake when raised by the dam to its highest capacity.

4. SAME—DAMAGES—EXCESSIVE AWARD.
The decree of the court below, on rehearing, awarding plaintiff $6,555, which erroneously included $2,155 for damages to crops, and an excessive amount of $600 for damages to land, will be reduced, on appeal, by deducting said amounts and a decree entered in this court for $3,820.

Appeal from Alcona; Widdis (Albert), J. Submitted January 5, 1921. (Docket No. 30.) Decided October 3, 1921.

Bill by Samuel Holcomb against the Alpena Power Company, Limited, to enjoin the maintenance of a dam. Defendant filed a cross-bill to determine plaintiff's past, present and future damages from such maintenance. From the decree rendered, defendant appeals. Modified and affirmed.

*W. S. Cobb,* for plaintiff.

*Henry & Henry,* for defendant.

Steere, C. J.   Hubbard lake is a body of water between 7 and 10 miles in length, within conflicting statements, and approximately from 1 to 2½ miles wide, located in the northern portion of Alcona county, Michigan.   Its only outlet is the south branch of Thunder Bay river which flows northerly out of the north end of the lake.   A dam has been maintained at this outlet for many years.   It was originally built and used to raise the water in the lake for floating logs and other forest products out of the lake and down Thunder Bay river to Alpena.   In 1906 defendant acquired the ownership and control of this dam which it rebuilt and has since utilized to store water in the lake for use during the dry season of the year at dams and industries on Thunder Bay river near Alpena.   In 1904 plaintiff purchased from a Mr. Gorsuch for $2,200 a 160-acre farm lying to the east and not far from Hubbard lake upon which were farm buildings and from 60 to 70 acres of cleared land. In 1906 he bought an adjoining fractional description of 65 acres for which he paid $175, the total cost to him of his 225-acre holding being $2,375.   None of the land bordered on Hubbard lake, the nearest being over three-quarters of a mile from its shores.

In 1910 plaintiff first brought an action against defendant to recover damages to his crops caused by raising the water of Hubbard lake.   The case was tried before a jury in Alcona county and he recovered a verdict of $1,080.70 for injury to his crops in 1907-1909.   The case was brought to this court for review on assignments of error and affirmed as having been properly submitted to the jury (175 Mich. 500).   In a subsequent action of like nature he recovered a

verdict and judgment of $1,398 for damages to his crops in the years 1910-1913 which defendant paid.

In April, 1916, he filed this bill of complaint in the circuit court of Alcona county, in chancery, asking for injunctive mandate to compel defendant—

"—to lower and take down the dam at the outlet of said Hubbard lake. * * * That said dam may be abated and said defendant perpetually enjoined by an order and injunction of this honorable court from keeping, maintaining or operating said dam at the point hereinabove described on lot 2, section 4, township 28 north, range 7 east, and from in any manner whatever preventing the natural flow of the water out of said Hubbard lake."

Upon the first hearing of this suit in the trial court the injunctive relief asked was granted, and defendant appealed the case to this court where the decree was reversed, this court holding that plaintiff was estopped by his conduct from the extreme remedy asked, but under the prayer in defendant's cross-bill remanded the case to take proofs and determine the question of damages in full, to be "computed upon the basis of the difference in the value of plaintiff's property as it is, and as it would be if the dam had remained as it was in 1905" (198 Mich. 165).

On remand of the case further hearing was had in the circuit court and proofs taken at great length. An opinion was filed by the circuit judge discussing the testimony and awarding damages to the amount of $6,555, made up of damage to the land, $4,420; damage to crops for the years 1914-1917, $2,135. Defendant has again brought the case here for review contending as in previous cases that the great weight of convincing evidence is against plaintiff's claim that the water of Hubbard lake invades and injures his land, which lies over three-quarters of a mile away from

215—Mich.—25.

the lake shore; that the proofs do not sustain damages to the amount awarded by the court for injury to the land, and the award is made on a wrong basis contrary to the directions of this court which did not contemplate damage to the crops but a full and final determination of all damages done to plaintiff's land on the basis of difference in value between the land in its present condition and what it would be had the dam remained as in 1905.

Plaintiff's farm is shown to be comparatively low and level land for the most part, lying near the head of an indentation or lobe of the lake called East bay, into which a small stream which passes through a portion of his land empties. With the lake at its normal level this stream has sufficient fall to afford him proper drainage. It is his claim and evidence that even the old dam with its lower head raising the level of the lake 4 or 4½ feet killed the current of the stream and backed the water up until it stopped the drainage and flooded his land in part, but did comparatively little harm as the dam was only used for logging purposes and the water released early in the spring, restoring the normal level of the lake in time for planting his crops, while the new dam raising the lake to a much higher level and used to conserve water for hydraulic purposes maintains as high a level as possible throughout the year, keeping his land so wet as to largely destroy its productivity.

That such is the result to a degree is *res adjudicata.* It was twice so determined by judgments in the circuit court of Alcona county which have not been set aside or reversed, one of them having been appealed to this court and affirmed. Although holding for the reasons stated that the trial court erred in granting the drastic relief by injunction prayed for in the instant case, this court in effect affirmed its conclusions on the proposition that the height at which defendant maintained

the level of the lake worked material damage to plaintiff's farm and remanded the case for determination of the damages in full on a stated basis advisedly adopted, with all which had been claimed and shown by both sides of the protracted litigation before the court as disclosed by two ample records.

In any aspect of the case we are impressed that the decree is excessive. This farm cost plaintiff $2,375 at about the time defendant acquired its dam. Peterson, the supervisor of his township, called by him as a witness, testified he had assessed it for the current year at $4,000, and unaffected by the water it would be worth $6,500 to $7,000. A neighboring farmer named Gillard, called by plaintiff, testified that the farm would be worth if unaffected by the water $8,500 and as affected was worth $6,000. Plaintiff appraised his farm unaffected by the water at $10,000, and placed the value of his buildings and orchard at $3,000. He conceded that the portion of his farm where the orchard and buildings were was not affected by the high water. The trial court found plaintiff had at least 140 acres of "usable" land, 92 of which were entirely unaffected by the water; that the buildings were old, not large and "commensurate with the size of that part of the farm unaffected by the water." If this award should stand plaintiff will have recovered damages from defendant, including previous awards by juries, amounting to $9,033.70, and yet owns the farm.

The court entertained plaintiff's claim for damages to crops and for the preceding four years awarded $2,135. This was in addition to his award based on determination of "the value of plaintiff's property as it is and as it would be if the dam had remained as it was in 1905." The decision and direction of this court in remanding the case confined the award to that basis, which does not include damages for crops.

Defendant's evidence consists mainly of testimony by engineers who took levels and made observations from which they testified that nearly all of plaintiff's land is from 4 to 5 feet above the water level of the lake when raised by the dam to its highest capacity. Plaintiff produced no engineer to directly contradict this testimony as to levels, but introduced testimony of old settlers, farmers and neighbors as to their experience and observation from year to year touching the height of the water and conditions of the soil resulting from different levels of the lake observed by them before and after defendant acquired the dam. Much of the testimony is direct and positive to the effect that since the dam was raised and the water retained the year round plaintiff was unable to raise good crops upon the land as before, detailing facts and circumstances which they had particularly noticed from year to year sustaining their assertions that raising the level of the lake by defendant had done serious damage to plaintiff's place. Their testimony as to these facts is not in the main met by any direct testimony of defendant's, although each party by its evidence indirectly contests that of the other. If the direct testimony from plaintiff's witnesses be true, that raising the water to the level shown and retaining it there impeded the draining of plaintiff's land and set the water back upon and through it, flooding and saturating the soil to an extent which seriously injured large portions of it, as said by Justice CAMPBELL in *Treat* v. *Bates*, 27 Mich. 390, "No theory can change the facts, and we need no aid of science to confirm the proofs of eyewitnesses." The law is well settled in this State, as well as elsewhere, that tests from observation and experience are competent evidence against scientific measurements and theories and often more satisfactory when the two are brought into conflict. *Turner* v. *Hart*, 71 Mich. 128 (15 Am.

St. Rep. 243), and *Brockway* v. *Power & Light Co.,*
175 Mich. 339.

Plaintiff's witnesses testified in detail as to the
several descriptions of land, the acreage, portions in-
juriously affected by the raised water in whole or in
part, values of the same if unaffected and as affected.
The trial court went over these several descriptions in
his findings and determined the injury, if any, as to
each description.     The record affords testimony to
sustain them in the main.     The trial judge had the
advantage of seeing, listening to and examining the
witnesses as he wished and viewing the premises with
their stories in mind.     After a careful examination of
this record we conclude, as before, that the dam as
maintained is a substantial damage to plaintiff's
farm, and are only disposed to disturb the award as
to the fractional w ½ of nw ¼ of section 7, being the
65 acres plaintiff bought for $175 in 1906, paying the
fair market value at that time as he stated, and
further testified that since that time land in that
region has doubled, and some of it trebled.     Ap-
parently disinterested witnesses called by him testify
this description, with the exception of from 5 to
7 acres which are cleared, is low, flat land seriously
affected by the water and of scant value except for the
timber upon it, and that it has "always been affected
by the water some."     They place its value if unaffected
by the water at from $15 to $25 per acre.     The court
awarded $1,800 for the damage done this description
by raising the water.     We conclude that under plain-
tiff's evidence, favorably considered, $20 per acre for
the 60 acres said to be overflowed is an ample award.
From the court's award of $6,555 must be deducted
$600 on this description and $2,135 erroneously in-
cluded for damages to crops, reducing the same to
$3,820.

A decree may be prepared accordingly, with costs of this court to defendant.

MOORE, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.

The late Justice BROOKE took no part in this decision.