KRAFT *v.* MILLER.

1. EQUITY—INJUNCTION—PROTECTION OF PROPERTY—FLOODING OF LANDS—SUBSTANTIAL DAMAGE.

Equity will enjoin the flooding of lands to protect the owner thereof from substantial damage.

2. WATERS AND WATERCOURSES—NATURAL CAUSES—PROXIMATE CAUSE.

The fact that natural causes contribute, with the unlawful acts of defendant, a lower riparian owner, in producing injury to plaintiff's land, does not relieve defendant from liability to plaintiff.

3. EVIDENCE—OBSERVATION—SCIENCE.

Tests from observation and experience are competent evidence against scientific measurements and theories and often more satisfactory when the two are brought into conflict.

Extinguishment of an easement by release, see 5 Restatement; Property, § 500; by abandonment, see § 504; effect of nonuser to show the abandonment of an easement, see § 504, comment d.

4. INJUNCTION—EQUITY—DAMAGES.

Where an injunction would occasion great injury to defendant and no substantial benefit to plaintiff, the injunction will be refused and plaintiff composed by an award of damages.

5. WATERS AND WATERCOURSES—HEIGHT OF DAM—SUBSTANTIAL DAMAGES.

In suit by upper riparian owners to enjoin dam owners from raising crest of dam, finding of trial judge that raising crest three feet would not result in flowing of, or substantial damage to, plaintiffs' lands was not erroneous under the conflicting testimony presented and such is permitted where an interruption in defendants' hydro-electric project in which they had invested many thousands of dollars would result in irreparable damage.

6. DEEDS—FLOWAGE RIGHTS—PREVIOUS WARRANTY DEEDS—LIFE ESTATE—RECORDING.

Defendants' claim as to flowage rights under deed of questioned authenticity *held*, without merit even if deed were valid, where such deed was given by plaintiffs' grantor after she had given plaintiffs a warranty deed without reserving water rights, but in which she reserved a life estate, now terminated, and such warranty deed was recorded on day of execution.

7. INJUNCTION—OPINION—MODIFICATION OF DECREE—CONSTRUCTION OF ADDITION TO DAM.

In suit for injunctive relief against owners of dam downstream from plaintiffs where opinion stated that no substantial damage has been, or would be, done to plaintiffs' property by raising defendants' dam 3 feet, and defendants added about 2½ feet of concrete construction, subsequent decree permitting only 2 feet of concrete construction and the other 1 foot of flashboards is modified to permit retention of concrete in place and limiting total of concrete and flashboard addition to 3 feet.

8. EASEMENTS—PRESCRIPTIVE RIGHT OF FLOWAGE—NONUSER.

Prescriptive rights of flowage may be terminated by nonuser for a period equal to that required for its creation.

9. SAME—CREATION BY GRANT—NONUSER—INTENT TO RELEASE SERVIENT ESTATE.

Mere nonuser will not extinguish an easement created by grant in a·deed in the absence of evidence establishing an intention to release the servient estate and extinguish the easement.

10. SAME—FLOWAGE RIGHTS—EXTINGUISHMENT BY ABANDONMENT—
INTENT—EVIDENCE.

Flowage rights acquired by owner of dam erected pursuant to
statutory authority and not used by him and his successors in
interest for upwards of 50 years after dam and mill were
destroyed *held*, extinguished by abandonment where evidence
shows an intent to release the servient estate and extinguish
the easement.

11. COSTS—FAILURE OF EITHER PARTY TO PREVAIL ON APPEAL.

No costs are allowed in suit for injunctive relief against lower
riparian owners where neither party prevails on appeal.

Appeal from Ingham; McDonald (Archie D.), J.,
presiding. Submitted January 8, 1946. (Docket
No. 21, Calendar No. 43,050.) Decided May 13,
1946. Rehearing denied June 28, 1946.

Bill by Lester C. Kraft and wife against George F.
Miller and others for injunction restraining the
raising of a dam beyond its present permanent con-
crete construction. Decree for defendants. Plain-
tiffs appeal. Defendants cross-appeal. Modified
and affirmed.

*Blackman & Blackman* and *John J. Gallagher,* for
plaintiffs.

*G. E. McArthur (Cummins & Cummins,* of coun-
sel), for defendants.

BUSHNELL, J. Plaintiffs Kraft, husband and
wife, are the owners of two farm properties located
on the Grand river in the township of Onondaga,
Ingham county. One of the properties, known as
the "small" farm, is located on the east side of the
Grand river, contiguous to the Kinneyville grist
mill dam property. The other, consisting of about
218 acres, known as the "large" farm, is located
on the west side of the river about one-half mile
upstream from the small farm.

Defendants George F. Miller, Charles D. Miller, and D. G. Miller are the owners of property located six miles down the river in Eaton county and on which is located the Smithville dam, which has been there for more than 50 years. When defendants acquired this property in 1936 they constructed a power house at the Smithville dam, which has since been remodeled from time to time. They have expended in excess of $50,000 thereon, and are now furnishing electricity to approximately 200 customers.

Plaintiffs acquired their title to both their properties by warranty deeds from Elizabeth C. Wilkinson on February 2, 1937. Neither deed makes any mention of reservations of water or flowage rights. Plaintiffs' grantor acquired both farms by inheritance from her mother in 1907, the property having been in the family, according to the abstracts, for over 30 years. The small farm at one time consisted of two contiguous parcels, one of 23 acres, and the other of 5 acres. The 5-acre parcel abuts the river and is the parcel near which the Kinneyville dam was located. This parcel was acquired by Elizabeth Wilkinson in 1915 from the heirs of Lester P. Francis, who acquired the same in 1892. In 1919 she conveyed any water rights appurtenant to the 5-acre parcel to Frank H. Sanders, whose widow in 1942 conveyed such rights to defendants. This 5-acre parcel was owned at one time by Stephan Kinney, who in 1848 obtained from the legislature, by a local act,* the right to erect a dam on the Grand River. This act provided that this dam "shall not exceed eight feet above common low-water mark." Kinney was required to maintain a chute for the passage of boats and was prohibited from entering upon or flowing land of other persons without their consent.

---

* Act No. 276, Laws of Michigan 1848.—REPORTER.

After the purchase of the Smithville dam property by defendants, they acquired all the flowage rights up to 12 feet of water to the Kinneyville dam property, with the exception of plaintiffs' "small" farm. The crest of the Smithville dam at the time of defendants' purchase was 879.08 feet above sea level, and 9.08 feet in height. The Kinneyville dam has not been operated since its destruction about 1890, and is presently merely a drop in the river, where there are old timbers and loose stones.

Plaintiffs in their bill of complaint filed November 19, 1943, charged that defendants, in disregard of plaintiffs' rights to have a continuous flow of water through and along their lands in its accustomed channel and natural volume, added temporary planking to their Smithville dam to a point approximately $3\frac{1}{2}$ feet over and above the top of the permanent dam, and that for three years preceding the filing of their bill of complaint plaintiffs' land has been flooded and been made untillable by the raising of the water level in the river and causing it to back up and seep into their property. They aver that defendants and their agents started to remove this temporary planking for the purpose of permanently raising the top of the dam so that it would be built up to a point $5\frac{1}{2}$ feet over and above its settled level. They charge that defendants' acts have caused a flooding of about 60 acres of plaintiffs' tillable land and caused approximately 25 more acres to become unfit for cultivation, and another 100 acres unusable for pasturage. Believing that they would thus suffer irreparable damage, they sought injunctive relief.

Defendants in their answer deny that they have changed the course or the volume of the flow of water and aver that any damage suffered by plain-

tiffs was due to excessive rainfall from time to time. They admit that they propose to repair, improve, and rebuild their dam in order to render its power more efficient, and to greatly reduce the danger at flood time; that they intend to replace the two feet of planking with concrete construction, but that such alteration will not raise the water in the Grand river higher than their legal right to do so. They state that the construction proposed will cost about $35,000, and that all of it is necessary to protect their hydroelectric plant. They charge that any delay in the prosecution of this work will cause them great financial loss, and may cause the entire destruction, or great damage to the dam and plant. They also seek to maintain their flowage rights in the Kinneyville dam property, by reason of the conveyance to their grantor in 1915, but they deny any intention to either reconstruct or maintain the Kinneyville dam at a greater height than that provided in the special act of the legislature, and by their conveyance.

In reply to defendants' answer, plaintiffs aver that any flowage rights arising out of the special act or defendants' deed have long since been extinguished by abandonment and nonuser. They take the position that, since there has not been any dam at Kinneyville since 1890, defendants have no right whatever to flow their premises.

The record contains the testimony of engineers who examined the properties and ran levels on the height of the water at Smithville and up the river to Kinneyville. There is also the testimony of nonexperts who have lived in the neighborhood for years and have had opportunity to know the waters from year to year.

The trial judge, at the request of counsel, viewed the properties in question on January 13th, prior to

the trial, and stated in his written opinion that he observed at that time:

"That so far as the small farm was concerned the water at that point was well below the banks thereof and the lagoons referred to by Dr. Kraft were dry, which of course, was at a time when no flashboards were up at the Smithville Dam. The land on the large farm generally sloped toward the river and the woods were damp and had many frozen small ponds thereon."

In this opinion he reviewed the history of the title to the various properties and the claims of plaintiffs and defendants. He held, as a matter of law, that the easement of flowage incident to the Kinneyville dam property had been extinguished by abandonment, and, therefore, defendants had lost any right that might have existed to raise the water level above the old Kinneyville dam site, by reason of any water rights incident to their ownership.

From the conflicting testimony he accepted that of Walter E. Zimmer, a civil engineer of 34 years' experience, based upon his findings from levels run beginning at a United States Geological Survey bench mark at Eaton Rapids, which was 873.52 feet above sea level, from which it was determined that the elevation at the top of the concrete of the Smithville dam was 879.08 feet above sea level.

The court found that the head water at the Kinneyville dam on February 4, 1944 (the trial having begun on February 9th), was 882.02 feet above sea level and, therefore, 2.94 feet, or approximately three feet higher than the crest of the Smithville dam. From elevations to the north and east of the dam on the "small" farm the lowest point, described by plaintiffs as the lagoon, of about one-ninth of an acre, was found to have an elevation of 883.5 feet, or 1.42 feet higher than the head water at the

Kinneyville dam.   Zimmer had testified that when
water was raised in the Smithville dam to three feet
above the old height of the dam, it would be only
882.08 feet at the Kinneyville dam and level with
its head water.   Elevations on a field of the small
farm, which plaintiffs claimed had been damaged
by seepage, disclosed that the lowest part of this
field was 13.6 feet higher than the lowest point at
the foot of the Kinneyville dam, and that the differ-
ence between the lowest point on this field and a
stake flush with the water level at Kinneyville, 960
feet away, was 11.43 feet.   Elevations taken on 60
acres of woodlands on the large farm, which plain-
tiffs claimed had been damaged by flowage, were
found to be at the lowest point some eight feet
higher than the water at the Kinneyville dam.

The court commented on the testimony pertain-
ing to unusual rainfall and floods in 1904, 1937,
1942, and 1943.   The court's conclusion is stated as
follows:

"Having in mind that the flashboards at times
were as high as three and four feet previous to the
year 1940 and that at that time the plaintiff did
not have trouble with water, the court, after due
consideration of all the testimony and a careful
consideration of actual conditions as observed by
the court and as testified to by the various wit-
nesses, is of the opinion that no substantial damage
has been done to the plaintiffs' property or will be
done to plaintiffs' property when the Smithville
dam is raised three feet higher than its present
height.   The injunction may therefore be dissolved
with the proviso that said dam will not be raised
higher than three feet."

The decree entered in accordance with this opinion
was later amended to enjoin defendants from ad-
ditional construction at the Smithville dam to a

height in excess of three feet above the crest of the dam as it existed at the time of trial, which was then stated to be an elevation of 879.08 feet above sea level and 9.08 feet in height. The decree provided that the first two feet of the additional three feet should be of concrete and the other one foot to be of flashboards; that sluiceways should be included, and that this construction should be of such a type that in time of flood waters "the dam may and shall be lowered to relieve such flood conditions."

Both parties have appealed from this decree.

Plaintiffs contend that sufficient damages were shown to their property to justify equitable relief, and that they are entitled to the natural and normal flow of the river.

Defendants contend that they have not lost their rights to flow properties above the Kinneyville dam site, by reason of abandonment and nonuser, and that they are entitled to a modification of the trial court's decree in order to raise the Smithville dam to a height of three feet by concrete construction, for the reason that the court found that a 12-foot head of water did not cause any substantial or material injury to plaintiffs' property. They further insist that, as a matter of law, they are entitled to maintain a 13 or 14-foot head of water, and that their rights to water power at the Kinneyville dam should be established.

In the recent case of *Ruehs* v. *Schantz,* 309 Mich. 245, the court quoted extensively from *White* v. *Forbes,* Walker's Ch. (Mich.) 112, to the effect that if substantial damage is done, equity will enjoin the flooding of lands. In *Stone* v. *Roscommon Lumber Co.,* 59 Mich. 24, it was held:

"The fact that natural causes contribute, with the unlawful acts complained of, in producing the in-

jury, does not relieve from liability to the injured party."

See, also, authorities therein cited. In *Holcomb v. Alpena Power Co.,* 215 Mich. 382, the court repeated the statement of Mr. Justice CAMPBELL in *Treat* v. *Bates,* 27 Mich. 390:

"No theory can change the facts, and we need no aid of science to confirm the proofs of eyewitnesses."

To this the court added:

"The law is well settled in this State, as well as elsewhere, that tests from observation and experience are competent evidence against scientific measurements and theories and often more satisfactory when the two are brought into conflict." Citing *Turner* v. *Hart,* 71 Mich. 128 (15 Am. St. Rep. 243), and *Brockway* v. *Hydraulic Power & Light Co.,* 175 Mich. 339.

We have examined the testimony in the light of these holdings, and at the same time have been mindful of the admonition in *Beaverton Power Co. v. Wolverine Power Co.,* 245 Mich. 541, 547, where the court said:

"In the flooding of any part of the Hunter farm plaintiff has a grievance, but if this can be composed by an award of damages, it will, in equity, be so done and an injunction refused in an instance where an injunction would occasion great injury to defendant and no substantial benefit to plaintiff. This principle of equity is elucidated in many opinions of this court."

See, also, authorities cited therein.

It must be remembered that defendants' investment in its power house at the Smithville dam, for which it paid $26,000, was begun in 1936, and now

amounts to many more thousands of dollars, resulting in a modern hydroelectric plant with Diesel engines serving the power needs of a rural community, and that interruption to this project would result in irreparable damage. It is likewise true that plaintiffs are entitled to the full use of both their farms without trespass by others, by reason of unlawful flowage of water. However, the testimony, although conflicting, is most persuasive in favor of defendants. A careful examination of the record does not justify the conclusion that the trial judge erred in his treatment of this rather difficult situation. We have considered all of the questions propounded in both appeals and are of the view that the trial judge arrived at the correct solution.

Defendants further claim flowage rights based on a deed from Elizabeth C. Wilkinson, dated "26th day of ~~September~~ March, in the year one thousand nine hundred and thirty-~~six~~ eight," which granted these rights on the land therein described, located in Onondaga township. The date of this deed to the Millers, if 1938, was subsequent to the Wilkinson deed to the Krafts on the small farm, and it was not recorded until some years thereafter, viz., November 24, 1943. However, this deed bears a notarial certificate showing that it was acknowledged by the grantor "on this 26th day of ~~September~~ March, in the year one thousand nine hundred and thirty-~~six~~ eight." (*Sic.*)

In addition to the questioned authenticity of the dates in this deed because of the alterations in it and the jurat, if the remaining date controls, the grantor had no title to the property described therein, she having conveyed the same without any reservation of water rights to the Krafts on Feb-

ruary 2, 1937, which deed was recorded the same day.

Defendants stated in their brief that they relied upon the trial judge's opinion that "no substantial damage has been done to plaintiffs' property or will be done to plaintiffs' property when the Smithville dam is raised three feet higher than its present height," and that nothing was said as to how much of this three feet should be of concrete construction. Subsequently, defendants added approximately 30 inches of concrete to the dam. The decree should be modified to permit the retention of the extra concrete in question, but in no event shall the total of concrete and flashboards exceed the additional three-foot head permitted by the decree of the trial court.

We agree with the determination of the trial judge that the water power or other rights incident to the dam at Kinneyville "have been lost by abandonment." Such rights originated in a grant and were not obtained by prescription. Prescriptive rights of flowage may be terminated by nonuser. As was said in *McDonald* v. *Sargent,* 308 Mich. 341, 343:

"Where the easement was imposed by prescription only, and not by grant or reservation in chain of title, defendants' nonuser for a period equal to that of its creation results in its loss."

However, mere nonuser will not extinguish a granted easement in the absence of "evidence establishing an intention to release the servient estate and extinguish the easement." *Greve* v. *Caron,* 233 Mich. 261, 266. And see authorities on this subject cited in *Hustina* v. *Railroad Co.,* 303 Mich. 581, 587.

In the instant case there is ample evidence of an intent to abandon, coupled with a nonuser, that

resulted in the extinguishment of the granted water rights at Kinneyville.

The dam was destroyed about 1890. One witness who had lived in the neighborhood for practically 51 years testified: "So far as I know, no use has been made of the Kinneyville dam for 40 years past." Another farmer testified:

"To my knowledge it has been 54 years since there has been a mill at the site of the Kinneyville dam. I do not know when the old mill was burned down. Fifty-four years ago there was a dam there. The condition of the dam at that time was that there were stones piled across there and there were square timbers across there piled on. There was a flume on the west side of the dam at that time. I was out there today when the visit was made to the properties. The condition of the dam today is not the same as it was 54 years ago. The timbers are gone. I didn't notice any of them today. It has just caved down in places. It is not like it was 50 years ago. I don't know how long it has been in the condition it is today. I haven't visited it in quite a number of years. I cannot tell the court whether or not there was ever a lock thereabouts along the dam to allow boats to go up and down the river. The dam has not been used for any purpose in the last 54 years, to my knowledge. * * *

"I have lived on my farm 44 years and before that I lived in the vicinity of Onondaga. I was not born there, and I came to Onondaga when I was 14 years old. I never saw the mill at Kinneyville. The mill was gone when I came to that vicinity. I had heard that the mill burned up." '

To quote another witness:

"I never saw a mill at the Kinneyville dam property. I think it was over 30 years ago that I was over that dam with another boy. We paddled a canoe from Eaton Rapids to Onondaga. At that

time the condition of the dam was such as we had to get out of our canoe and carry it across the rocks and float it again. As of today the condition of the dam looks a little bit more spread out than it did at that time, I don't remember. I don't remember the height of the water when we went over there in this canoe trip. It seems like it does today. That trip was something like 30 years ago. The dam was not in use at that time and it has not been in use since that I know of. I don't know anything about it prior to 30 years ago.''

"*Mr. Cummins:* There is no claim made that there is any mill, a mill or any structure, operating there in 30 or even 40 years.''

This statement by defendants' counsel, together with the testimony of the two witnesses, is sufficient to show ''an intention to release the servient estate and extinguish the easement.''

The trial judge observed that:

''Ordinarily failure to repair does not constitute abandonment, but abandonment may be predicated upon facts showing the means of enjoyment of an easement have been in a state of disrepair for a long period of time. It will be noted in the instant case 25 years had passed before the Kinneyville dam property was acquired by Elizabeth C. Wilkinson, and her successors in title, including the present owners of the land, have never constructed a mill thereon, and that there is no intention of ever using said dam for any of the purposes for which it was intended. It would seem therefore that the easement incident to the dam has been abandoned.''

Neither on the facts nor the law are the defendants entitled to maintain a 13- or 14-foot head of water at Smithville, nor do they have any rights of flowage arising out of and derivative from the Kinneyville grant.

A modified decree may be entered as herein suggested, but otherwise the decree of the trial court is affirmed. Neither party having prevailed on appeal, no costs will be allowed.

BUTZEL, C. J., and CARR, SHARPE, BOYLES, REID, NORTH, and STARR, JJ., concurred.