BEAVERTON POWER CO. *v.* WOLVERINE POWER CO.

1. SPECIFIC PERFORMANCE—CONTRACTS—FLOWAGE RIGHTS.

A mere assurance that a dam about to be erected would not flow land beyond a certain point, and an oral agreement to grant flowage rights, in reliance upon which certain land was purchased, did not constitute a contract susceptible of specific performance; there being no writing made, no consideration paid, and no part performance.

2. SAME—WHEN CONTRACT ENFORCEABLE.

If the court decree specific performance, it must state the contract to be performed, and must find it valid and binding upon the party ordered to carry it out.

3. ESTOPPEL—WHEN SPECIFIC PERFORMANCE MAY NOT BE INDIRECTLY ACCOMPLISHED.

What the court may not do under the rule of specific performance may not be indirectly accomplished under the doctrine of equitable estoppel.

4. FRAUDS, STATUTE OF—FLOWAGE RIGHTS—INTEREST IN LAND—HOW ACQUIRED.

The right of flowage is an interest in land, and may only be acquired by an instrument in writing, under seal, in the nature of a deed of conveyance or by prescription.

5. SAME—FLOWAGE RIGHTS MAY NOT BE CONVEYED BY VERBAL AGREEMENT.

A verbal agreement to convey a right of flowage is void, will not admit of a decree for specific performance, nor work the same result by way of equitable estoppel; neither will a breach thereof serve as a basis for awarding damages.

6. WATERS AND WATERCOURSES—FLOWING LAND—DAMAGES—INJUNCTION—EQUITY.

Where a power company flooded land belonging to another power company, not by reason of agreement, but without right, and, if enjoined as prayed for, great damage would result to it with inconsequential result to the owner, the latter

should be required to accept damages and have the same fixed once for all, and such damages should not be limited to the amount per acre paid for the land, but something more than its mere value should be awarded.

Appeal from Gladwin; Smith (Guy E.), J. Submitted October 5, 1928. (Docket No. 80, Calendar No. 33,293.) Decided January 7, 1929.

Bill by the Beaverton Power Company against the Wolverine Power Company for specific performance of an oral agreement to grant flowage rights. Defendant filed a cross-bill for affirmative relief. From a decree for defendant, plaintiff appeals. Modified and affirmed.

*George E. Nichols,* for plaintiff.

*John C. Shaffer* (*Tracy, Chapman & Welles* and *William C. Manchester,* of counsel), for defendant.

WIEST, J. The Beaverton Power Company, plaintiff, filed the original and amended bills herein to obtain specific performance of an alleged verbal agreement binding defendant company to release to plaintiff the right to flow the Weinholdt farm, so-called, by a dam to be erected by plaintiff across the Tobacco river at the north 8th line of section 16, Tobacco township, Gladwin county, and to enjoin defendant from raising the water in the river above such line. The Wolverine Power Company, defendant, by answer and cross-bill, alleged an agreement binding plaintiff to grant it right to flow, by its dam at Edenville, the Hunter farm, so-called, up to the north and south quarter line of section 9 of the same township. The circuit judge was unable to find the agreement alleged by plaintiff, and, therefore, refused specific performance, and also denied relief

to plaintiff by way of equitable estoppel or injunction. The court restrained plaintiff from erecting a dam at the north 8th line of section 16, or below the north and south quarter line of section 9, and awarded plaintiff $270 for all damages occasioned by flowage of the Hunter lands, past, present, and future, by defendant's dam at Edenville. Plaintiff appealed.

The Beaverton Company has a power dam across the Tobacco river at the city of Beaverton, Gladwin county, and the Wolverine Company has a power dam across the same river ten or eleven miles lower down at Edenville. While defendant's dam was in course of construction it was erroneously supposed by officers of the Wolverine Company that the dam would not back water above the crossing of the north 8th line of section 16, and for that reason they were willing that the Beaverton Company acquire title to the Hunter farm of 156 acres on the southerly side of the river, the lower end of which is at the 8th line of the section, but claim that this was based on an agreement that, if the water did flow any part of the Hunter farm, the Beaverton Company should permit the same upon payment for such land. The Beaverton Company acquired title to the Hunter farm and claims the right to erect a dam at the 8th section line. At the mentioned line and across the river from the Hunter farm is the Weinholdt farm, the title to which is in the Beaverton Company, but with right of flowage thereon in the Wolverine Company. The right of flowage of the Weinholdt farm being in the Wolverine Company, the Beaverton Company could not erect a dam at the 8th line unless it acquired such right of flowage. The Beaverton Company holds rights of flowage from its dam at Beaverton to the north 8th line of section 16, with

the exception of the Weinholdt property, and the Wolverine Company holds rights of flowage from its Edenville dam to the north and south quarter line of section 9, with the exception of the Hunter farm.

Right to flow the Weinholdt land was acquired by Frank I. Wixom, as trustee, in June, 1916. In August, 1913, the Riverdale Farms Company, of which Mr. Wixom was a stockholder but not an officer, was organized to take over, and later did acquire flowage options held by Mr. Wixom. December 11, 1918, Mr. Wixom, trustee, deeded the flowage rights to the Riverdale Farms Company, a corporation, and May 30, 1923, that company deeded the flowage rights to the Wolverine Company. The Wolverine Company was organized in March, 1923. June 1, 1923, the Wolverine Company executed a mortgage, inclusive of the flowage rights, to the Ohio Savings Bank & Trust Company of Toledo, Ohio.

Plaintiff claims that Mr. Ronald Ross, its president, was assured by Mr. Frank I. Wixom, president and general manager of the Wolverine Company, that the back water of the Edenville dam would not go to the north 8th line of section 16, where plaintiff company proposed to place its new dam and a release of the flowage rights on the Weinholdt lands would be given plaintiff for $600, and, relying thereon, the Hunter farm was purchased by it at an expense of $8,500, and title to the Weinholdt land, subject to flowage right, purchased at a cost of $400. Defendant denied the alleged assurances.

Mr. Ross testified that in January, 1923, Mr. Wixom informed him that the dam to be built near Edenville would back water in the Tobacco river a little above the Dale bridge; that he then told Mr. Wixom of the plan to purchase the Hunter land,

provided he could also buy the flowage right held by the Wolverine Company on the Weinholdt land, and Mr. Wixom said he would be glad to sell it as the water would not back up there and he would attend to it right away; that in April, 1923, he told Mr. Wixom that a Mr. Behan had been to see him about the Hunter land, and Mr. Wixom said that Mr. Behan had been to see him and he had told Mr. Behan that he could not use the land and was not interested, and, ''if Ross wanted it they did not want to do anything against him, something to that effect.'' Following this talk Mr. Ross purchased the Hunter farm for $8,500, and some time later deeded to the Beaverton Company.

Mr. Wixom testified that his talk with Mr. Ross related to a proposed dam above the north and south quarter line of section 9, and at that point a dam would not interfere with the pondage of water at Edenville, and that he was willing to let Mr. Ross, in behalf of the Beaverton Company, acquire title to the Hunter farm by reason of an agreement made by Mr. Ross with him that if the dam at Edenville did flow any part of the Hunter farm such flowage should be permitted upon payment for the land so covered.

Mr. Manchester, vice-president of the Wolverine Company, also testified to such an agreement made by Mr. Ross.

If we accept the testimony of Mr. Ross we cannot find a contract susceptible of specific performance. There was no agreement with the Wolverine Company. No writing was made and no consideration paid, and there was no part performance in any respect. At the most there was reliance upon the assurance that the dam at Edenville would not back water to the Hunter and Weinholdt farms, and, there-

fore, Mr. Ross, for the Beaverton Company, purchased the Hunter farm and title to the river frontage of the Weinholdt farm, subject to right of flowage in the Wolverine Company.

If we decree specific performance, we must state the contract to be performed and must find it valid and binding upon the party we order to carry it out. This we cannot do upon this record. What we cannot do under the rule of specific performance cannot be indirectly accomplished under the doctrine of equitable estoppel.

The Beaverton Company, having established no right to interfere with defendant's flowage of the Weinholdt farm, and, therefore, no right to erect a dam from the Hunter land to the Weinholdt land, below the mentioned quarter line, brings us to the question of the right of the Wolverine Company to flood, if necessary, any part of the Hunter land.

The right of flowage is an interest in land (*Township of Beaverton* v. *Lord,* 235 Mich. 261), and can only be acquired by an instrument in writing, under seal, in the nature of a deed of conveyance or by prescription. *Glidden* v. *Beaverton Power Co.,* 223 Mich. 383. A verbal agreement to convey a right of flowage is void, will not admit of a decree for specific performance, nor work the same result by way of equitable estoppel. Neither will a breach thereof serve as a basis for awarding damages. The alleged verbal agreement, set up by plaintiff, was void and the alleged verbal agreement, set up by defendant, was also void, because both related to rights of flowage and neither was in writing. Both being void, no relief can be granted either party thereunder. We cannot grant defendant right of flowage of the Hunter farm by virtue of any agreement.

The decree in the circuit proceeded on the theory that there would be flooding of a small portion of the lower part of the Hunter farm, and compensation was awarded for the damage occasioned thereby, past, present, and future. This, of course, was not based upon any agreement, but upon the fact that the flooding was, and will be, without right, but, under the circumstances disclosed and the great damage to the Wolverine Company, if enjoined as prayed for by plaintiff, and the inconsequential result to plaintiff, the plaintiff should be required to accept damages and have the same fixed once for all.

In the flooding of any part of the Hunter farm plaintiff has a grievance, but if this can be composed by an award of damages, it will, in equity, be so done and an injunction refused in an instance where an injunction would occasion great injury to defendant and no substantial benefit to plaintiff. This principle of equity is elucidated in many opinions of this court. See *Fox* v. *Holcomb*, 32 Mich. 494; *Hall* v. *Rood*, 40 Mich. 46 (29 Am. Rep. 528); *City of Big Rapids* v. *Comstock*, 65 Mich. 78; *Blake* v. *Cornwell*, 65 Mich. 467; *Allen* v. *Thornapple Electric Co.*, 144 Mich. 370 (115 Am. St. Rep. 453); *Howard* v. *Bellows*, 148 Mich. 410; *Stock* v. *City of Hillsdale*, 155 Mich. 375; *Murphy* v. *Water Power Co.*, 204 Mich. 511; *Monroe Carp Pond Co.* v. *River Raisin Paper Co.*, 240 Mich. 279.

Neither party may construct a dam between the mentioned 8th line and the quarter line, under existing conditions. This being true, we are not impressed with the claim that plaintiff will be seriously damaged by the small amount of flowage on the lower part of the Hunter farm. We do not think, however, that the damage for all time is to be fixed in accord with the mentioned void agreement. The

circuit judge evidently awarded plaintiff, for the land estimated subject to flowage, the amount per acre that plaintiff had paid for the same. We think something more than the mere value of the land should be awarded, and fix the damages at the sum of $500.

With the modification mentioned, the decree is affirmed, with costs to defendant.

NORTH, C. J., and FEAD, FELLOWS, CLARK, MC-DONALD, POTTER, and SHARPE, JJ., concurred.