NAIMISH *v.* WARDLOW.

1. Navigable Waters—Lake Level—Findings—Evidence.

Findings of facts relative to level of water of lake across a portion of which defendant sought to build a road to land that was isolated by current water level *held,* supported by proofs in suit to enjoin such construction and lowering of lake level so as to render it less usable for boating purposes.

2. Same—Acquiescence—Water Level—Estoppel.

A quarter of a century of continued acquiescence by all persons affected by water level of lake, established in 1921 at substantially its original level, estopped riparian owners from interfering with plaintiff riparian owners' rights in the waters of the lake.

Appeal from Oakland; Adams (Clark J.), J. Submitted October 13, 1960. (Docket No. 83, Calendar No. 48,277.) Decided January 9, 1961. Rehearing denied February 28, 1961.

Bill by John G. Naimish and Madelon N. Naimish against Maude Wardlow and Norman F. Rice to enjoin filling in lake for road construction and to restrain acts lowering lake level. Daniel W. Barry, Oakland county drain commissioner, added as party defendant. Decree for plaintiffs, including provision against lowering lake level beyond established elevation. Defendant Rice appeals. Affirmed.

REFERENCES FOR POINTS IN HEADNOTES

[1] 56 Am Jur, Waters § 64.

Relative riparian or littoral rights respecting removal of water from natural, private, nonnavigable lake. 54 ALR2d 1450.

[2] 56 Am Jur, Waters § 61.

*Smith & Pratt* (*Philip Pratt,* of counsel), for plaintiffs.

*Philip E. Rowston,* for defendant Rice.

*Norman R. Barnard,* Oakland County Corporation Counsel, *Charles A. Davis* and *Robert P. Allen,* Assistants Corporation Counsel, for defendant drain commissioner requesting affirmance.

CARR, J.   The circuit judge before whom this suit was heard filed as the basis for the decree entered a well-considered opinion presenting the facts and the issues raised by the pleadings and the proofs of the parties.   From our examination of the record before us we are convinced that the conclusions set forth in said opinion were fully supported by the proofs. We therefore adopt the following opinion of the circuit judge as the opinion of this Court:

"In September, 1953, the defendant, Norman F. Rice, purchased a farm in section 14, Highland township, Oakland county, Michigan, with frontage on Duck lake.   For many years the land had been owned and occupied by the Wardlow family.   In the following year the plaintiffs, John G. and Madelon N. Naimish, purchased land in section 11, Highland township, from Mr. and Mrs. Dean B. Wilhelm, who, like the Wardlows, were old residents of the community. Plaintiffs' land adjoins the defendants' land on the south and borders in part on Duck lake.

"The 2 farms are separated by the section line between sections 11 and 14, and the boundary line is marked by a line fence established years ago.   The fence line as extended easterly runs into Duck lake, and this litigation is concerned with the location of that line fence and its proximity to Duck lake.

"Easterly of Duck lake lies White lake, a much larger body of water.   When the community was first settled the waters of White lake flowed naturally

through low lands into Duck lake and from Duck lake again over low lands on to the west.

"In 1886, for reasons now unknown, a county drain was established at the southwest end of the lake and the natural water level of Duck lake lowered some 3 feet. . As a consequence of the lower lake level the land area covered by the waters of Duck lake was greatly reduced in size and those who owned land adjacent to the lake obtained additional land for cultivation.

"In 1921 Bert and Maude Wardlow owned and farmed the lands now owned by the defendant, and the Wilhelms owned and farmed the lands presently belonging to the plaintiffs. Together they owned all the frontage on the southwest end of the lake. Having concluded that their property interests would be enhanced by bringing the lake level back to its former natural height, they obtained the approval of county officials (although such approval does not appear in public records) and in the absence of recorded objections by other affected property owners, proceeded to install a permanent watertight box at the drain entrance with a top opening some 3 or more feet above the original drain opening. The waters of Duck lake then rose to a height comparable to that attained in its original state and has remained at that level to this date subject to variations caused by seasonal conditions, excessive rains, droughts, and manipulations of boards in the box at the drain entrance.

"In 1948 the waters of White lake became excessively high and in order to take care of an unusual flow of water from that lake into Duck lake, the drain at the southwest end of Duck lake was cleaned and improved by public authorities with no drastic change in the level of the lake. In 1953 the defendant, Norman F. Rice, had a canal dug into his land from the shore line of Duck lake and with the permission of county authorities installed a new drain entrance some 300 feet south of the earlier inlet, again with no appreciable change in the lake level.

"It was of course inevitable that the boundary lines of the water area known as Duck lake would change in 1886 when the original drain was installed, and again later in 1921 when the drain entrance was raised. In the year 1886 the waters of the lake covered more land than is covered today. After the installation of the drain in that year the lake area was much smaller. In 1921 the water again rose to near its original height and has remained at substantially the same elevation to the present time. New lake boundaries developed and water covered land that had been exposed during the period from 1886 to 1921. Significantly in relation to this cause, the rising waters created a small bay on the north side of the lake extending into plaintiffs' property at a point about 150 feet east along the section line from the quarter section corner. The bay isolated a small portion of Bert Wardlow's land from the larger area.

"Thirty-four years later, after the defendant, Norman F. Rice, had acquired the Wardlow property, he decided to fill in the bay in order to build a road to the isolated land. Completion of the road would have prevented the plaintiffs from reaching the waters of Duck lake at that point. Plaintiffs immediately brought this action to restrain the defendants from continuing to fill or build up their land and alleging that they are equitably estopped from interfering with plaintiffs' established riparian rights. The defendants on the other hand insist that the land upon which they seek to build a road was never beneath the waters of Duck lake as legally established and that therefore the plaintiffs have no riparian rights in the water which sometimes covers their land.

"To reach a decision in this cause first requires a finding of facts and to that end the court finds from the testimony and exhibits that:

"(1) The installation of the county drain in 1886 lowered the natural lake level of Duck lake to approximately a U. S. G. S. elevation of 1,013.56 feet.

"(2) In 1921 Dean B. Wilhelm, the plaintiffs' predecessor in the chain of land title, and Bert Wardlow, the defendants' predecessor in chain of land title,. mutually and intentionally cooperated in the construction of a new drain inlet for the purpose of raising the elevation of the water level of Duck lake.

"(3) In the months immediately following the installation of the new drain inlet, the lake level raised to a U. S. G. S. elevation of approximately 1,016.63 feet.

"(4) The average U. S. G. S. elevation of the lake has remained at 1,016.63 feet since that date with fluctuations above and below that height due to seasonal conditions.

"(5) As a consequence of the change in water level elevation in 1921 the waters of Duck lake flowed northerly across the section line unto the plaintiffs' land creating a small bay from which bay the plaintiffs and their predecessors in chain of title have consistently had access to the waters of Duck lake.

"(6) Since 1921, and excepting only for rare drought periods, there has been water in the small bay separating the defendants' larger land area from the small isolated area east of the bay.

"(7) The plaintiffs and their predecessors in chain of title have in no way disturbed or changed the topography of the land under the waters of the bay.

"(8) The east and west line fence separating the lands of the parties has, through long acquiescence of the owners of the 2 parcels, become the true boundary line of the properties.

"These findings of fact are based largely on the testimony of Dean B. Wilhelm, as corroborated by the testimony of Harry E. Nelson, Herbert Measel,. Lowell King, and Harold Wardlow.   Mr. Wilhelm, a man of mature years, lived on the Naimish property for many years, and has been familiar with it since 1892 when he first visited his grandfather, the then owner of the land.   His testimony was extremely helpful in clarifying and coordinating the earlier testimony of witnesses which had originally ap-

peared to be contradictory. His appearance and demeanor on the witness stand convinced the court that he not only had an excellent memory but that he was intent on presenting an unbiased story of the changes in Duck lake as he had seen them during his lifetime. From his testimony and that of the other named witnesses, the court is satisfied that the waters of Duck lake have extended north across the section line unto the plaintiffs' property for the last 34 years. Moreover, the testimony shows, and the court finds that both the plaintiffs and their predecessors in chain of title have for that same period used the small bay as a place to moor their boats without challenge or disputed right.

"This court is of the opinion that the most significant disclosure bearing upon a decision in this cause is the uncontroverted fact that Bert Wardlow, through whom the defendant, Norman F. Rice, claims his ownership rights, was the individual who had the most to do with the establishment of the presently existing water level elevation of Duck lake. With his neighbors he conceived the idea of raising the water level. The new drain opening was located on his land and with his neighbors he built the inlet. As a consequence of his planned and voluntary action, tillable land was taken from all who owned property adjacent to the lake. The boundaries of their usable lands were changed. Insofar as the record shows all affected persons acquiesced with Mr. Wardlow in the development of the new shore line without regard to whether they were benefited or not.

"Twenty-seven years later, in 1948, the county drain commission approved of the established elevation of the lake by cleaning out and improving the drain inlet without disturbing its height. In 1953 the present defendant, Mr. Rice, indicated his approval and acquiescence in the conditions then existent by seeking permission to change the location of the drain inlet without suggesting a change in the elevation of the lake level.

"In reliance on that established condition the plaintiffs and all other owners of land fronting on Duck lake have utilized their properties for the past many years in a manner consistent with the present lake boundaries. To now lower the lake level by some 3 feet as urged by the defendants, would seriously damage all frontage on the lake.

"The defendants and their predecessors in ownership have by their conduct and actions induced the plaintiffs and other lake front property owners to rely upon an established water level elevation for a period of 34 years. With particular reference to the plaintiffs, they purchased their land in 1954 after observing the water conditions then existing. Furthermore, they acquired their property *subsequent* to the time when the defendants moved the drain inlet without disturbing the lake level.

"The defendants and their predecessors voluntarily and deliberately surrendered certain uses of their land in 1921. At that time it appeared to them to be to their advantage. Other persons owning land on the lake acquiesced in the change—a change which affected the boundaries of all usable land touching the lake. Subsequent purchasers of frontage had every reason to believe that they were acquiring riparian rights in the waters of Duck lake. After more than a quarter of a century of continued acquiescence by all affected persons, those riparian rights should no longer depend upon the whim or caprice of the defendants.

"It is therefore the opinion of this court that the defendants are now equitably estopped from asserting a right to interfere with the plaintiffs' riparian rights in the waters of Duck lake. Plaintiffs may have a decree permanently restraining the defendants, their agents and assigns from filling in the land under the waters of the bay in Duck lake immediately south of plaintiffs' lands. The decree will further provide that the defendants be permanently restrained from lowering the drain inlet below a U. S. G. S. elevation of 1,016.63 feet. All temporary or-

ders entered by the court during the pendency of this cause are vacated. Costs to the plaintiffs."

The decree entered in the circuit court is affirmed. Plaintiffs may have costs on appeal.

Dethmers, C. J., and Kelly, Smith, Black, Edwards, Kavanagh, and Souris, JJ., concurred.