LENAWEE COUNTY BOARD OF COMMISSIONERS v ABRAHAM

Docket No. 78-4496. Submitted October 2, 1979, at Lansing.—Decided November 20, 1979.

In 1967, Eppa and Hazel Plate entered into an agreement with Loch Erin, Inc., giving Loch Erin the option to purchase a 118-acre tract of land and the right to work on the land. Loch Erin, Inc., was a real estate development company which was constructing a lake on property adjacent to the tract in question. The option expired without having been exercised and the parties executed a second option agreement in 1969. According to the second agreement Loch Erin was to purchase the tract, with payments made in installments, and had the right to excavate and build dikes and flow water on the land. Loch Erin was to receive a deed upon payment of the full purchase price. A dike was built and the property was flooded when Loch Erin defaulted on the installment payments. In 1971 the Plates sold the tract to Abraham Realty, Inc. and Richard and Marilyn Abraham, subject to "visible easements". About 25 or 30 acres were under water at the time. Abraham Realty then sold its one-half interest in the land to John and Lorraine Abraham. All of the Abrahams were shown a copy of the second option agreement by Mr. Plate at the time of sale. In 1972 Abraham Realty brought an action to quiet title, and a consent judgment gave Loch Erin, Inc., a third option to purchase, which was never exercised. Loch Erin, Inc., eventually transferred its interests in the project to another party.

In 1975, and again in 1977, proceedings were held under the Inland Lake Level Act to determine the proper level of the lake. The Abrahams were duly notified but did not appear at the 1977 hearing nor did they appeal when a special assessment district was created pursuant to the act for the purpose of

REFERENCES FOR POINTS IN HEADNOTES

[1] 4 Am Jur 2d, Appeal and Error § 119.
  5 Am Jur 2d, Appeal and Error § 872.
[2] 28 Am Jur 2d, Estoppel and Waiver § 53.
  78 Am Jur 2d, Waters §§ 82-85.
[3] 78 Am Jur 2d, Waters §§ 206-209.
[4] 78 Am Jur 2d, Waters § 297 *et seq.*

maintaining the lake level. The county drain commissioner had been named, at the first hearing, to be responsible for maintaining the lake. When the drain commissioner attempted to make necessary repairs and to install a drainage pump system, the Abrahams refused to let the commissioner on their land. The Lenawee County Board of Commissioners thereupon brought an action against the Abrahams, seeking a declaration of rights. The Loch Erin Property Owners Association, a group of persons holding land contiguous to the lake, intervened in the action. The Lenawee Circuit Court, C. Ralph Kohn, J., held that the Abrahams were estopped from interfering with the flooding necessary to reach the full lake level or to prevent the county from maintaining the lake level and that they were not entitled to any compensation. The Abrahams appeal. *Held:*

1. The Abrahams are estopped, by their acquiescence in the Inland Lake Level Act proceedings, from preventing the necessary repairs and improvements to maintain the lake level.

2. The language of the second option agreement between the Plates and Loch Erin, Inc., was sufficient to create an easement for the flooding of the land. Because the Abrahams purchased the land with full knowledge of that agreement and of the flooding which was already in progress, they are estopped from now recovering any compensation for the flooding.

Affirmed.

1. Appeal and Error — Declaratory Judgments — De Novo Review.

Review of declaratory judgments is conducted *de novo;* however, the Court of Appeals will not reverse a trial court's factual findings unless they are clearly erroneous.

2. Estoppel — Inland Lakes — Lake Levels — Statutes.

An interested party who "stands by" or acquiesces in a determination of a lake level pursuant to proceedings held under the Inland Lake Level Act is estopped from subsequently denying the county the necessary access to land for the purpose of improving and maintaining an inland lake level as determined by the statutory proceedings (MCL 281.61 *et seq.;* MSA 11.300[1] *et seq.).*

3. Easements — Water — Flowage — Successors to Estate.

The right to flow water over another's land is an easement, which can be acquired only by prescription or by a writing; once established, an easement normally is binding against successors to the servient estate.

4. EASEMENTS — PURCHASERS OF LAND — INJUNCTION — DAMAGES.

A party who purchases land with full knowledge of the land's condition and of an easement granted to another may not thereafter obtain injunctive relief against the other's use of the land consistent with the easement, nor may the purchaser obtain damages for such use.

*Harvey A. Koselka,* Prosecuting Attorney, for plaintiff.

*Robertson, Bartlow & DesChenes, P.C.,* for defendants Abraham.

*Kerr, Russell & Weber* (by *Robert R. Nix, II),* for the Loch Erin Property Owners Association.

Before: DANHOF, C.J., and N. J. KAUFMAN and D. C. RILEY, JJ.

D. C. RILEY, J. The immediate proceeding before us on appeal involves a tract of land consisting of 118 acres in Lenawee County.

A brief recitation of the facts is necessary for a clear understanding of the three issues raised by the defendants and our disposition of same.

In November, 1963, Eppa E. and Hazel Plate, defendants' predecessors, purchased 178 acres of land for use as farm land. This property consisted of 60 acres on the south side of Reed Road upon which several buildings existed and a 118-acre tract on the north side of the road. The latter is the subject of this litigation.

On May 14, 1967, the Lenawee County Board of Supervisors granted permission to Loch Erin, Inc., a land development corporation, to construct a dam to impound the waters of Wolf Creek to create Loch Erin, a lake of 650 acres. The dam was constructed, many adjacent lots were sold and

sewer construction permits were granted during the years following.

In 1967, Eppa and Hazel Plate entered into an option contract with Loch Erin, Inc., giving the latter the right to purchase 118 acres of the former's neighboring land. The option agreement gave Loch Erin, Inc., the right to work on this land, and timber was removed from the property during this period. The option to purchase the land expired without having been exercised and a second such agreement was executed in 1969. At this point, the dam, but not the dikes, had been constructed and Mr. Plate realized that the land in question would be flooded. In exchange for paying a total purchase price of $42,500, payable in installments of $5000 each, Loch Erin, Inc., was to have the right to remove vegetation, to excavate and build dikes to flow water on the land up to 926 feet above sea level and to ultimately receive a deed to the property. When Loch Erin, Inc., defaulted after three installments, a dike had already been built on the property and the property had been flooded with water. Plate never demanded removal of the dike or the water after default.

In July, 1972, the Plates sold the 118 acres to Abraham Realty, Inc., and defendants Richard and Marilyn Abraham. The recorded deed stated that it was subject to visible easements. At this time, approximately 25 to 30 acres of the tract were under water. (Approximately 80 of the 118 acres are under water when the lake is entirely full.) In August, 1971, Abraham Realty, Inc., conveyed its undivided one-half interest in the property to defendants John and Lorraine Abraham. At this time, the dam had been built and a dike was being constructed. Eppa Plate showed defendants a copy

of the second option agreement. Thus, defendants clearly knew about the Loch Erin project and were also aware of the existence of the lake at the time of purchase.

In 1972, Abraham Realty brought an action to quiet title against Loch Erin, Inc., and the Plates, which resulted in a consent judgment giving Loch Erin, Inc., a third option to purchase the property which was never exercised. This option contained no provision for removal of the water and/or dike in the event of default. In 1973 or 1974, financially troubled Loch Erin, Inc., transferred its interest in the project to Leisurealty, Corporation.

A lake level proceeding was brought under the Inland Lake Level Act of 1961, in May, 1975, to determine the proper lake level of Loch Erin. Defendants, named as third-party defendants therein, filed a petition praying that the drain commissioner be nominated to assume responsibility for the lake level, determined by the court to be 920 feet above sea level.

In June, 1977, a second lake level proceeding was instituted. Defendants were notified, but did not personally appear. The court ordered the lake level to be set at 926 feet, so it would be a full lake rather than a swamp. A special assessment district was created by the court in September, 1977, for the purpose of maintaining Loch Erin at 926 feet. Despite receipt of notice, defendants did not appear at the special assessment proceedings nor did they appeal the lake level assessment.

At the time of trial, Loch Erin was weedy and totally incapable of use by neighboring owners. Certain repairs such as clearing out grass and repairing the dikes are necessary to make the lake usable once again. In response to defendants' refusal to allow the Lenawee County Drain Commis-

sioner on their property to make necessary repairs and install a drainage pump system, as well as notification from defendants that they wanted use of their total parcel for agricultural purposes and would sue to force removal of the lake, plaintiff brought this declaratory judgment action. Soon after, Loch Erin Property Owners Association successfully moved for intervention.

On September 8, 1978, a Lenawee County Circuit Court judge ruled that defendants were estopped from asserting any property interests in the tract that would interfere with the flooding necessary for the lake or that would prevent plaintiff from maintaining it. Further, it was ruled that defendants were not entitled to any compensation since there was no taking by plaintiffs. Defendants appeal from the denial of their motion for new trial.

Review of declaratory judgments is conducted *de novo* by the Court of Appeals. *Henry v Henry,* 362 Mich 85, 98; 106 NW2d 570 (1960), *Curbelo v Macomb County Community College Trustees,* 38 Mich App 432, 433; 196 NW2d 843 (1972). However, this Court will not reverse a trial court's facutal findings unless they are clearly erroneous. *Welfare Employees Union v Civil Service Comm,* 28 Mich App 343, 349; 184 NW2d 247 (1970). We find no such error in the present case.

We find initially that defendants are estopped from denying plaintiff access to the land because of the Inland Lake Level Act of 1961 proceedings, MCL 281.61 *et seq.,* MSA 11.300(1) *et seq.* The avowed purpose of this act is to determine and maintain inland lake levels for public welfare and benefit. *In re Martiny Lakes Project,* 381 Mich 180, 187; 160 NW2d 909 (1968). As stated in MCL 281.70; MSA 11.300(10):

"The court shall hear proofs and allegations of *all parties interested.* The court shall determine the level to be established and maintained * * *." (Emphasis added.)

There is no question that defendants were vitally interested in the status of Loch Erin. Yet they failed to personally appear, or to contest or appeal the lake level determinations. In such a case, we conclude that a "standing by" or "acquiescence by conduct" type of estoppel precludes defendants from now preventing the dike repairs and improvements. See *BPA II v Harrison Twp,* 73 Mich App 731, 735; 252 NW2d 546 (1977), *Green v Millman Brothers, Inc,* 7 Mich App 450, 457; 151 NW2d 860 (1967). See also *Naimish v Wardlow,* 362 Mich 198; 106 NW2d 770 (1961).

We also conclude that defendants are estopped from gaining any relief regarding the flooding of their land. Since defendants and defendants' predecessors either granted or tolerated an easement to Loch Erin, Inc., neither an injunction nor damages is appropriate.

The right of flowage is an easement that can only be acquired by prescription or by a writing such as a deed. *Beaverton Power Co v Wolverine Power Co,* 245 Mich 541, 546; 222 NW 703 (1929), *Glidden v Beaverton Power Co,* 223 Mich 383, 395; 193 NW 862 (1923). A written contract may also suffice to establish an easement. See *Outhwaite v Rodgers,* 214 Mich 346; 183 NW 74 (1921). Once established, an easement normally is binding against successors to the servient estate. See *Kraft v Miller,* 314 Mich 390; 22 NW2d 857 (1946).

In the instant case, the second option agreement between the Plates and Loch Erin, Inc., clearly satisfies the statute of frauds requirement under Michigan law. MCL 566.106; MSA 26.906. We

believe that its language was sufficient to establish an easement to flow water over defendants' land.

Injunctive relief will not be available to an owner if he purchases land with full knowledge of the land's condition and of easements granted to others. *Gardens of Rest, Inc v Upper Michigan Power & Light Co,* 322 Mich 153; 33 NW2d 741 (1948), *Morrison v Queen City Electric Light & Power Co,* 181 Mich 624; 148 NW 354 (1914). This is true for damages as well. *Glidden, supra.*

In *Glidden, supra,* the plaintiff brought suit for damage to his land. Defendant claimed that he had the right to flood the land through a specific deed granted to him by plaintiff's predecessor. The Court denied damages and stated that even though there was only a small amount of plaintiff's land under water at the time of purchase, that, combined with knowledge of conveyance of flowage rights and other water power developments, was sufficient to have put plaintiff on notice of possible encroachments on his full ownership.

The same is certainly true in the instant case. The deed accepted by defendants specifically stated that the conveyance was subject to all "visible easements". While at that time only 25 to 30 acres were under water, we believe that this was sufficient to put defendants on notice of a possible encroachment on their property. Defendants readily admitted that they were aware of the dam and the lake. Further, the Plates showed them the second option agreement outlining the extent of possible development on the land in question. Far from being innocent purchasers, defendants should have investigated or protested the limitations on their property at the time of purchase. We conclude that defendants are estopped from now recovering compensation for a condition to which the property was subject at the time of purchase.

Affirmed. Costs to appellees.