*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JACK MORLEY,

      Plaintiff-Appellant,

v

TOWNSHIP OF BANGOR,

      Defendant-Appellee.

UNPUBLISHED
April 25, 2019

No. 340636
Bay Circuit Court
LC No. 14-003743-CZ

Before: STEPHENS, P.J., and GLEICHER and BOONSTRA, JJ.

PER CURIAM.

Jack Morley filed suit against Bangor Township, complaining that the township's activities on a parcel dedicated to park uses altered the natural flow of surface water toward the Kawkawlin River and caused flooding on his neighboring land. The circuit court dismissed Morley's trespass-nuisance claim on governmental immunity grounds and his takings claim for failure to state a claim upon which relief could be granted. The circuit court failed to recognize that at the time Morley filed his action, MCL 600.5821(2) only applied to "[a]ctions brought by any municipal corporations," and not to actions brought by private citizens against municipalities. The court thereby erroneously determined that Morley could not state a viable takings claim. However, the circuit court properly dismissed Morley's takings claim on an alternate ground—that it was not filed within the statute of limitations. The court also failed to recognize that a governmental agency may be sued for equitable relief from a trespass nuisance. We affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

In 1993, Morley purchased a 106.5-acre irregularly shaped parcel of vacant land in Bangor Township for $1. To the north of Morley's property is "Bay Side Park," a 26-acre irregularly shaped parcel dedicated to Bangor Township for use as a park. Both parcels are within the Kawkawlin River watershed, but are separated from the river by a swath of riverfront homes and a roadway.

Morley began to farm his land but quickly discovered that much of his property was low lying and waterlogged; 92.3 acres have been designated as wetland. He started filling it in, but the United States Army Corp of Engineers (USACOE) advised him that the area was protected and ordered Morley to stop this activity. In 1994, Morley sought "After-The-Fact" permission for his work. The USACOE ordered Morley to return the land to its previous condition within 30 days and to pay a fine, both of which Morley did. A 1997 inspection revealed that the wetlands were recovering according to plan and the USACOE notified Morley that it would stop monitoring the site.

Different activities took place in the park to the north. In 1978, the township began allowing the USACOE to use the park as a dump site for sand and silt, also known as "spoils," periodically dredged from the Kawkawlin River. In approximately 1996, the township went further, digging a pit for the spoils and erecting berms to distinguish the area. In 1999, a newly elected township supervisor expressed concern about the legality of using the park as a spoils dump site and asked the city attorney to investigate. On September 17, 1999, the city attorney responded that the spoils dump site was not permitted under the language of the land dedication. The township board of trustees voted to level the site on November 9, 1999. The next day, the city hired a contractor "[t]o provide a dozer and operator for leveling the berms around the Kawkawlin River Dredge Disposal Site and finish grading to achieve positive drainage to the Frank Jean County Drain." The former town supervisor, who had negotiated the 1996 project, wrote a letter "express[ing] [his] extreme disappointment" with the turn of events. The township's December 13, 1999 response indicated that the park had already been "return[ed] to a 'level playing field' both physically and philosophically."

Morley contends, however, that the township continued to bring in material and grade the land. He accuses the township of crossing the properties' boundary line with the spoils it spread. In an affidavit, Morley attested that township maintenance man, Joe Zielinski, approached him on August 3, 2016, and reported that he had slowly moved soil and yard waste across the property line over the past 10 years.[1] At the township supervisor's direction, Zielinski stated that he had also exacerbated Morley's drainage problems by "level[ing] the hill and reduc[ing] the slope on the Park property." Morley presented the affidavit of a professional surveyor, Kevin Pomaville, who prepared a topographical survey of the park and north end of Morley's property. Pomaville noted 12 acres of "raised elevations" in the park. This was a larger elevated area than anticipated in Michigan Department of Environmental Quality (MDEQ) and USACOE permits and the elevations were greater than permitted.

Professional engineer Timothy Lapham reviewed the survey and aerial photographs of the area in the public record. Lapham attested that he visited the area and observed "indications . . . that fill was added in Park Property . . . and also moved to the south to cross" onto Morley's land. Lapham also reviewed an undated, hand-drawn Bay County Drain Commission map recording the natural flow of water. The map showed that water historically

---

[1] At a later hearing, the township argued that Zielinski's statements as reported by Morley were inadmissible hearsay, and emphasized that Morley never sought to depose Zielinski.

flowed from Morley's property across the park. Lapham noted his observations that the natural flow of water "ha[d] been altered by the placement of spoils or alteration of land" on the park and actually had been "reverse[d] . . . such that water in the Park would be diverted towards" Morley's land.

The MDEQ, on the other hand, observed that Morley was again engaging in illegal terraforming in the regulated wetlands in 2007. Morley apparently ignored the MDEQ's notice and was cited by the USACOE as well in October 2008. On November 19, 2009, the MDEQ notified Morley that it inspected his property and found that he had engaged in illegal fill activity on 4.1 acres of protected wetland. The MDEQ ultimately filed suit against Morley, securing a judgment requiring Morley to return the wetlands to their former condition and avoid future violations, and imposing a $30,000 fine. This Court affirmed that judgment in *Dep't of Environmental Quality v Morley*, 314 Mich App 306; 885 NW2d 892 (2015).

Dissatisfied with his lot, Morley filed suit against the township in 2014, claiming that the township's regrading of the park raised its elevation and prevented the natural flow of water from Morley's land across the park toward the Kawkawlin River. In this regard, Morley asserted that he possessed "a prescriptive flowage easement by the topography." Morley called the condition a "nuisance" and accused the township of taking his property through the "invasion of water and sediments." He sought indemnification as well as abatement of the issue.

The township sought summary disposition pursuant to MCR 2.116(C)(7), (8), and (10). The township contended that it was engaged in a governmental function (storing materials removed from the river to prevent flooding) and was therefore immune from liability. The township asserted that there is no nuisance or indemnification exception to governmental immunity. Moreover, the township claimed, Morley had caused his own damages by repeatedly violating wetland protection laws. And the township contended that Morley's takings claim was either not yet ripe for judicial review or was barred by the statute of limitations. The claim was not yet ripe because Morley had not availed himself of extrajudicial procedures to secure just compensation for his alleged loss. Even if the claim was ripe, the township continued, it had completed its activity at the park by 2000. Morley then had three years to file his takings claim under US Const, Am 5.

Morley retorted that "[t]he historical condition of" the park land and his property was that "water ebbed and flowed . . . across the respective properties on a transitory basis" until the township's activity of "moving soil and fill[ing] in lower elevations" altered that course "[o]nly in the last decade or so." The statute of limitations for abating nuisances such as reclaiming flowage easements, Morley noted, is actually 15 years. Moreover, the township's conduct was ongoing, creating a continuing violation with a fluid statutory limitation period. Accordingly, the township's activity within the last decade preserved his challenge. Morley argued that a six or 15-year statute of limitations should apply to his takings claim and that there was at least a question of fact that the taking occurred in that timeframe.

As to the substantive merits of his claims, Morley noted that the wetlands on his property had historically been in the southwest corner, not in the north near the park. The north part of the property only became sodden when the water could no longer cross the increased elevation of the park. Morley cited his experts' affidavits stating that the elevation at the park was greater

than that permitted by state and federal authorities who approved the regrading. Morley further relied on Zielinski's communication that the township supervisor directed him to keep moving soil across the property line despite Morley's repeated complaints that drainage had been reduced. Morley denied that his past alleged violations of wetland regulations had any bearing on this case. The 1994 matter related to the southwest portion of his land, and the matter underlying this Court's prior opinion related to the southeast. He had made no property alterations to the north that could have caused the flooding conditions.

The township responded that the continuing violation doctrine had been abolished in Michigan and therefore could not be relied upon to save Morley's nuisance claim.

The circuit court summarily dismissed Morley's trespass-nuisance claim pursuant to MCR 2.116(C)(7), concluding that the township was immune from such claims pursuant to *Pohutski v Allen Park*, 465 Mich 675; 641 NW2d 219 (2002). The court also dismissed the indemnification claim, a ruling that Morley does not challenge on appeal. The court denied the motion to dismiss Morley's takings claim "based upon interference with the flow of water" because Morley's allegations were "enough" to plead to a state-law claim. The state-law claim would have a 15-year statute of limitations, the court noted, and sufficient allegations supported that the challenged actions occurred within that time period. The complaint did not clearly allege a state-law claim, however, and the court ordered Morley to file an amended complaint with "a more clear statement" of his claim.

In his amended complaint, Morley again asserted that water previously flowed from his property, across the park land and toward the river, creating a water flowage easement. By raising the elevation of the park property, Morley complained, the township interfered with that easement. Not only did water on Morley's property pool, additional water from the park flowed onto his land. The standing water prevented Morley from using the land and led to further adverse action from the MDEQ. In the takings count, Morley alleged that the "physical invasion of water and sediments" on his property occurred as a result of the township's "blocking a natural flow easement" and "physical placement of soil" on his land. These actions occurred from 2004 to the present and resulted in a taking of the land, Morley asserted.

The township again sought summary disposition of Morley's takings claim pursuant to MCR 2.116(C)(7) (statute of limitations), (8), and (10). The township contended that Morley had not pleaded or proven the elements of a state-law takings claim. Morley's claim sounded in inverse condemnation, the township opined, and he was therefore required to establish "that the government's action was a substantial cause of the decline of the plaintiff's property, and that the government abused its legitimate powers through affirmative action directly aimed at the plaintiff's property." The township further noted that Morley was required to show that the value of the property was so reduced by the township's activities that the land was essentially taken. The specific property interest at issue in this case was a prescriptive flowage easement. However, the township argued, "property owned by a municipality is not subject to an easement by prescription." This was true under the common law and under MCL 600.5821(2), prior to 2016, and MCL 600.5821(2)(c) after the enactment of 2016 PA 52, the township contended. As the easement legally did not exist in the first place, it could not be taken.

-4-

The township further contended that its actions did not cause the alleged damage to Morley's property. It presented the affidavit of former township supervisor and longtime township resident Joseph Rivet attesting that Morley's property had always been prone to flooding in the area in question. Moreover, spoils had been deposited on the park since at least 1978; the park had not been in its "natural state for decades" and no sudden change caused the flow of water to be blocked or reversed.

The township asserted that the takings claim was barred by the statute of limitations. The township cited a six-year statute of limitations for inverse condemnation claims, citing *Hart v Detroit*, 416 Mich 488; 331 NW2d 438 (1982). The 15-year statute of limitations to recover possession of lands found in MCL 600.5801(4) does not apply in such cases pursuant to *Hart*, 416 Mich at 498, because the plaintiff is seeking compensation for the value taken and not truly repossession of the land. The township cited the board's 1999 vote to level the spoils dump site and letter indicating that the project was complete to support that the six-year statute of limitations had long passed by the time Morley filed suit in 2014. The township cited Morley's trial testimony in the earlier MDEQ action and his deposition testimony in this case as blaming the influx of water into the northern portion of his property on the USACOE's dredging of the Lagoon Beach Canal off the Kawkawlin River. This occurred no later than December 5, 1999.

In his response, Morley did not address the township's legal assertion that Morley could not adversely take an easement for the flow of water across public land and therefore Morley could not claim that his easement was "taken." Although Morley tried to lay out a timeline of more recent activity, he focused his argument around the already dismissed trespass-nuisance count, not on the taking of his property.

The circuit court ultimately dismissed the takings claim as well. The court noted that the claim sounded in inverse condemnation. However, under Michigan law, a private citizen cannot claim a prescriptive easement over public land. Accordingly, Morley never had a prescriptive easement for the flow of water across the park and could not file suit against the township for taking that easement. The court dismissed the takings claim under MCR 2.116(C)(8), failure to state a claim upon which relief could be granted. The court went on, however, to hold that the claims were also barred by the statute of limitations, supporting dismissal under (C)(7). The court concluded by noting:

> but it really doesn't matter since you can't bring that action, anyway. . . . It is, in essence, a claim for taking of a prescriptive right to the water flow, . . . so it doesn't matter about the statute of limitations, really, because you can't bring that type of suit against the township, anyway. Do I think that's right and fair? No. But that's just my personal opinion, and I have to follow the law, and that's what the law is.

Morley appeals, challenging the circuit court's dismissal of his takings claim based on the statute of limitations and governmental immunity, and the court's dismissal of his claim seeking nuisance abatement.

## II. STANDARD OF REVIEW

We review de novo a circuit court's resolution of a summary disposition motion. *Zaher v Miotke*, 300 Mich App 132, 139; 832 NW2d 266 (2013). A court may grant summary disposition under MCR 2.116(C)(7) if the moving party is entitled to "immunity granted by law." *Odom v Wayne Co*, 482 Mich 459, 466; 760 NW2d 217 (2008). We review de novo the applicability of governmental immunity. *Seldon v Suburban Mobility Auth for Regional Transp*, 297 Mich. App. 427, 433; 824 NW2d 318 (2012). When reviewing a motion under subsection (C)(7), we "must accept all well-pleaded allegations as true and construe them in favor of the plaintiff, unless other evidence contradicts them." *Dextrom v Wexford Co*, 287 Mich App 406, 428; 789 NW2d 211 (2010). Further, we must consider "any affidavits, depositions, admissions, or other documentary evidence" submitted. *Id*. at 429.

> Summary disposition under MCR 2.116(C)(7) is [also] appropriate when the undisputed facts establish that the plaintiff's claim is barred under the applicable statute of limitations. Generally, the burden is on the defendant who relies on a statute of limitations defense to prove facts that bring the case within the statute. [*Stephens v Worden Ins Agency, LLC*; 307 Mich App 220, 227; 859 NW2d 723 (2014) (cleaned up)[2].]

> A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint on the basis of the pleadings alone to determine if the opposing party has stated a claim for which relief can be granted. We must accept all well-pleaded allegations as true and construe them in the light most favorable to the nonmoving party. The motion should be granted only if no factual development could possibly justify recovery. [*Zaher*, 300 Mich App at 139 (cleaned up).]

## III. NATURE OF THE CLAIMS

Morley appeals the dismissal of two claims. The first is essentially for the abatement of a trespass nuisance. The second claims a taking of an easement for the flow of water.

A trespass nuisance is a

> trespass or interference with the use or enjoyment of land caused by a physical intrusion that is set in motion by the government or its agents and resulting in personal or property damage. The elements may be summarized as: condition (nuisance or trespass); cause (physical intrusion); and causation or control (by government). [*Hadfield v Oakland Co Drain Comm'r*, 430 Mich 139, 169; 422 NW2d 205 (1988), overruled by *Pohutski v Allen Park*, 465 Mich 675; 641 NW2d 219 (2002).]

---

[2] This opinion uses the new parenthetical (cleaned up) to improve readability without altering the substance of the quotation. The parenthetical indicates that nonsubstantive clutter such as brackets, alterations, internal quotation marks, and unimportant citations have been omitted from the quotation. See Metzler, *Cleaning Up Quotations*, 18 J App Pract & Process 143 (2017).

Morley's takings claim sounds in inverse condemnation; he claims that the township's policy and action on the park property impacted his land, causing a loss of beneficial use. "Inverse condemnation is a taking of private property for a public use without the commencement of condemnation proceedings. Under the Michigan and United States Constitutions, a victim of such a taking is entitled to just compensation for the value of the property taken." *Hart*, 416 Mich at 494. A claim for inverse condemnation also stands "[w]here the property has been damaged rather than completely taken by governmental actions." *Merkur Steel Supply, Inc v Detroit*, 261 Mich App 116, 129; 680 NW2d 485 (2004).

> What governmental action constitutes a "taking" is not narrowly construed, nor does it require an actual physical invasion of the property. No precise formula exists. Pertinent factors include whether the governmental entity abused its exercise of legitimate eminent domain power to plaintiff's detriment. Further, a plaintiff alleging inverse condemnation must prove a causal connection between the government's action and the alleged damages. A plaintiff alleging a de facto taking or inverse condemnation must prove that the government's actions were a substantial cause of the decline of his property's value and also establish the government abused its legitimate powers in affirmative actions directly aimed at the plaintiff's property. [*Hinojosa v Dep't of Natural Resources*, 263 Mich App 537, 548; 688 NW2d 550 (2004) (cleaned up).]

The property interest at issue in this case is the right to have water naturally flow from one's property.

> "The right of flowage is an easement that can only be acquired by prescription or by a writing such as a deed." *Lenawee Co Bd of Comm'rs v Abraham*, 93 Mich App 774; 287 NW2d 371 (1979), citing *Beaverton Power Co v Wolverine Power Co*, 245 Mich 541, 546; 222 NW 703 (1929). . . . "[I]t is an easement to flow water over another's land." [*Abraham*, 93 Mich App at 780.] [*Terlecki v Stewart*, 278 Mich App 644, 660; 754 NW2d 899 (2008).]

## IV. TRESPASS NUISANCE

The circuit court improperly dismissed Morley's claim for the abatement of a trespass nuisance on governmental immunity grounds.

MCL 691.1407(1) of the governmental tort liability act (GTLA), MCL 691.1401 *et seq.*, states, "Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." The act provides five exceptions to the immunity granted by § 1407(1): the highway exception, MCL 691.1402; the motor vehicle exception, MCL 691.1405; the public building exception, MCL 691.1406; the proprietary function exception, MCL 691.1413; and the governmental hospital exception, MCL 691.1407(4). The Legislature may also provide for a cause of action against a governmental agency when enacting specific legislation. *Mack v Detroit*, 467 Mich 186, 195; 649 NW2d 47 (2002). The Supreme Court clearly and emphatically held in *Pohutski*, 465 Mich at 690, that "the plain language of the [GTLA] does not contain a

trespass-nuisance exception to governmental immunity. Trespass-nuisance simply is not one of the five exceptions to immunity set forth in the [GTLA]."

Morley argued in the circuit court that his action survived because he sought only abatement of the nuisance, not monetary damages. The Supreme Court stated in *Hadfield*, 430 Mich at 152 n 5, "Generally, we do not view actions seeking only equitable relief, such as abatement or injunction, as falling within the purview of governmental immunity." The *Hadfield* decision, however, was a nonbinding plurality opinion. This Court subsequently held in *Jackson Co Drain Comm'r v Stockbridge Village*, 270 Mich App 273, 284; 717 NW2d 391 (2006):

> The plain language of [MCL 691.1407] does not limit the immunity from tort liability to liability for damages. As noted in *Pohutski*, [465 Mich] at 689, governmental immunity is to be broadly construed, while exceptions to immunity are to be narrowly construed. To construe the statute as plaintiffs urge in the instant case [such that governmental immunity does not apply where plaintiffs' trespass-nuisance action seeks only equitable relief], would be to construe governmental immunity narrowly.

After this Court's decision in *Jackson Co*, the Supreme Court reversed course and followed the *Hadfield* plurality. In *Lash v Traverse City*, 479 Mich 180, 204-205; 735 NW2d 628 (2007), the Court indicated that governmental immunity does not apply to claims seeking declaratory or injunctive relief. The plaintiff in *Lash* sued Traverse City for monetary damages, alleging that the city denied him employment because he did not meet the city's residency requirement and that the residency requirement violated MCL 15.602(2). *Lash*, 479 Mich at 182-183. The Supreme Court held that the city's residency requirement violated MCL 15.602(2); however, the Court also held that nothing in the statute permitted the plaintiff to maintain a private cause of action for damages against the city. *Lash*, 479 Mich at 183. In response to the plaintiff's contention that a private cause of action for damages was the only mechanism to enforce the statute, the Court opined that the plaintiff could have enforced the statute by seeking injunctive relief under MCR 3.310 or declaratory relief under MCR 2.605(A)(1). *Lash*, 479 Mich at 196.

An action to abate a nuisance is "equitable in nature." *Ypsilanti Charter Twp v Kircher*, 281 Mich App 251, 270; 761 NW2d 761 (2008), citing MCL 600.2940(5); see also *Hadfield*, 430 Mich at 152 n 5. Governmental immunity does not protect Bangor Township from a declaration that its actions created a nuisance, an injunction to prevent future nuisance, or a judgment to abate an existing nuisance. Accordingly, the circuit court improperly dismissed Morley's trespass-nuisance claim on governmental immunity grounds. We vacate the court's judgment in that regard.[3]

---

[3] We acknowledge that this Court has previously declined to answer the question raised in this case and instead remanded to the circuit court for further proceedings. In that case, however, the circuit court had not reached the issue and we merely declined to consider the issue in the first

Our vacation and remand does not necessarily entitle Morley to a trial on his action for abatement of a trespass nuisance. The township also argued that the claim was raised beyond the applicable statute of limitations, that Morley failed to state an actionable claim, and that Morley failed to create a genuine issue of material fact. On remand, the township may reassert these challenges for the circuit court's consideration.

## V. TAKING

The circuit court did properly dismiss Morley's takings claim, however, on statute of limitations grounds.

There is a distinction between cases in which a governmental entity diverts water onto another's property and cases in which the governmental actor blocks the flow of draining surface water. "It is well settled that a governmental actor may cause a taking of private property by flooding the property or diverting excess surface water onto the property." *Wiggins v City of Burton*, 291 Mich App 532, 572; 805 NW2d 517 (2011). See also *Herro v Chippewa Co Rd Comm'rs*, 368 Mich 263, 265-267; 118 NW2d 271 (1962). Although Morley complained that the flow of water had been reversed and water was flooding the northern portion of his land, he did not otherwise state a claim for a taking based on the physical invasion. To establish a taking, a landowner must plead facts supporting "a diminution in the value of the property or a partial destruction." *Merkur Steel Supply*, 261 Mich App at 125. Morley alleged no facts and presented no evidence regarding any reduction in his property value. He did not describe the size of the area in question or explain how he previously used that portion of his land. Morley focused on the physical invasion of water onto his property in his trespass-nuisance claim instead.

Morley directed his takings claim at the township's interruption of the natural flow of water from his property across the park. The natural flow of water across another's property is an easement known as a "flowage easement." *Terlecki*, 278 Mich App at 660. As noted, a flowage easement can be granted in a deed, but otherwise must be taken adversely by prescription. *Id*.

When Morley filed suit against the township in 2014, MCL 600.5821 provided, in relevant part:

> (1) Actions for the recovery of any land where the state is a party are not subject to the periods of limitations, or laches. However, a person who could have asserted claim to title by adverse possession for more than 15 years is entitled to seek any other equitable relief in an action to determine title to the land.

---

instance without adequate argument from the parties. See *Wiggins v City of Burton*, 291 Mich App 532, 573-574; 805 NW2d 517 (2011).

(2) *Actions brought by any municipal corporations for the recovery of* the possession of any public highway, street, alley, or any other public ground are not subject to the periods of limitations. [Emphasis added.]

The language in subsection (1)—"the recovery of any land"—is similar to the phrase in subsection (2)—"the recovery of the possession of"—and has been interpreted to preclude the claiming of prescriptive easements as well as title in actions against the state. See *Matthews v Dep't of Natural Resources*, 288 Mich App 23, 35-36; 792 NW2d 40 (2010).

Subsection (2) of the statute has since been amended to more specifically provide for the preclusion of prescriptive easements across municipal land and to apply to actions both by and against municipalities:

> (2) *In an action involving the recovery or the possession of land*, including a public highway, street, alley, easement, or other public ground, *a municipal corporation . . . is not subject to* any of the following:
>
> (a) The periods of limitations under this act.
>
> (b) Laches.
>
> (c) A claim for adverse possession, acquiescence for the statutory period, or a prescriptive easement. [MCL 600.5821(2), as amended by 2016 PA 52 (emphasis added).]

Even if the applicable version of MCL 600.5821(2) had expressly included a prohibition of prescriptive easements across municipal land, the statute would not preclude Morley's takings claim. The version of the statute in effect when Morley claims his interest was taken and when he filed suit only applies to actions *brought by* a municipality and not to actions against a municipality.[4] In *Adams Outdoor Advertising, Inc v Canton Charter Twp*, 269 Mich App 365, 370; 711 NW2d 391 (2006), this Court stated in dicta: "It is also undisputed that MCL 600.5821(2) precludes a party from claiming adverse possession against a municipal corporation." The municipal defendant in that case apparently did not challenge the applicability of the statute to an action brought against a municipality; "[t]he sole issue before [this Court was] whether the disputed property falls within the scope of 'public ground' immune from adverse possession claims under MCL 600.5821(2)." *Adams Outdoor Advertising*, 269 Mich App at 370.

This Court has since determined based on a more direct review of the pertinent language that the pre-amendment version of MCL 600.5821(2) only applied in an action *brought by* a municipality. In *Mason v City of Menominee*, 282 Mich App 525, 528-529; 766 NW2d 888 (2009), this Court reasoned:

---

[4] Statutory amendments are presumed to apply prospectively only. See *Johnson v Pastoriza*, 491 Mich 417, 429; 818 NW2d 279 (2012); *Brewer v AD Transp Express, Inc*, 486 Mich 50, 56; 782 NW2d 475 (2010).

While subsection (1) applies to "[a]ctions for the recovery of any land where the state is a party," subsection (2) applies to "[a]ctions brought by any municipal corporations . . . ." It is evident from the language employed in subsection (1) that the Legislature could have made subsection (2) applicable in all cases brought by or against a municipality. The Legislature, however, chose not to do so. Further, interpreting subsection (2) to apply to any case in which a municipality is a party would render the words "brought by" in subsection (2) nugatory.

Judge Beckering provided a concurring opinion in *Mason* "to express [her] concern that in actions involving a dispute over municipal land, the Legislature may not have anticipated the potential for inconsistent outcomes, depending on which party beats the other to the courthouse, given its chosen language in MCL 600.5821(2)." *Mason*, 282 Mich App at 533 (BECKERING, J., concurring). The Legislature took no action to address this concern until 2016. In the meantime, this Court followed *Mason*'s reasoning in *Waisanen v Superior Twp*, 305 Mich App 719; 854 NW2d 213 (2014).

As in *Mason*, this case involves a private citizen suing a municipality for recovery of an interest in land. The action was not brought by the municipality and therefore the prohibition in the applicable version of the statute does not bar Morley's claim. Summary disposition pursuant to MCR 2.116(C)(8) was improper.

The township alternatively argues, however, that summary disposition was appropriate based on the statute of limitations. The circuit court stated that the statute of limitations for an inverse condemnation claim is six years. Morley filed suit on December 18, 2014. Accordingly, he was required to present evidence that the township had taken his prescriptive easement on or after December 18, 2008. The court determined that Morley filed his claim beyond the statute of limitations because "under the facts that have been developed through [the] discovery process, that time is - - has run prior to the filing of the suit, regardless of whether you look at the work being completed in - - in 1999 or 2003 or [2004]. . . ." Morley had urged a 15-year statute of limitations, which would require activity on or after December 18, 1999. The court noted that the limitations period had run even under that more generous period. "[E]ven if the 15 year statute would apply, the proofs brought out in discovery show that by the plaintiff's own testimony, the problem stems from work that was completed in 1999."

The latest activity that could have caused the reverse of the water flow across the park land was completed by December 13, 1999, according to the letter sent from the township to a former township supervisor. Morley presented no admissible evidence of any activity after that date. A party may support and challenge a motion for summary disposition under MCR 2.116(C)(7) only with evidence "the substance of which would be admissible at trial." *Odom v Wayne Co*, 482 Mich 459, 466; 760 NW2d 217 (2008). Here, Morley provided his own affidavit stating that Zielinski told him on August 3, 2016, that he had been moving material across the property line for more than a decade on the township's directive. Morley's recitation of Zielinski's statements are inadmissible hearsay and he never proffered an affidavit or deposition testimony from the speaker. Other witnesses, such as Morley's expert professional engineer, observed fill material on Morley's side of the property line, but could not date the placement.

Based on this record, even under the more generous 15-year statute of limitations, Morley's takings claim would be time-barred. Accordingly, the circuit court properly dismissed this claim.

We affirm in part, vacate in part, and remand for further proceedings consistent with this opinion. We do not retain jurisdiction. As neither party prevailed in full, neither may tax costs pursuant to MCR 7.219(A).

/s/ Cynthia Diane Stephens
/s/ Elizabeth L. Gleicher
/s/ Mark T. Boonstra